**Philip A. DeMASSA, Robert Kent Lahodny, Robert Marceron, and Marie D. Carlile and Sonny Barger, Plaintiffs/Appellants/Cross-Appellees,**

v.

**Peter NUNEZ, Stephen W. Peterson, Ronald Dulisse, John Rafenstein, James Conklin, Carl Oroz, Lawrence McKinney, Norman Catalano, Paul Duvall, David McGregor, and Diogenes K. Galanos, Defendants/Appellees/Cross-Appellants.**

Nos. 83–6271, 83–6363, 83–6470.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 3, 1984.

Decided Nov. 20, 1984.

Ferguson, Circuit Judge, filed a dissenting opinion.

Barry Tarlow, Los Angeles, Cal., for plaintiffs/appellants/cross-appellees.

Roger W. Haines, Asst. U.S. Atty., San Diego, Cal., for defendants/appellees/cross-appellants.

Before ANDERSON, TANG and FERGUSON, Circuit Judges.

TANG, Circuit Judge:

Attorney Philip DeMassa and other plaintiffs appeal the district court's denial of injunctive relief claiming that the district court erred by failing to order the return of all documents and property seized in a raid on DeMassa's office pursuant to an investigation of DeMassa's alleged ties to a drug smuggling operation. The government cross-appeals, arguing that the district court erroneously invalidated parts of the search warrant as overbroad. We dismiss both appeals for lack of appellate jurisdiction.

## I.

On April 18, 1983, Drug Enforcement Administration agents obtained search warrants to enter and search the home and law office of attorney Philip DeMassa. The magistrate issuing the warrant appointed an attorney, Paul Duvall, to act as special master whose duty was to supervise the search. The affidavit supporting the warrant drew largely on information received from a government informant whom the affiant claimed made several references to DeMassa's alleged involvement in a drug smuggling operation.

The search started the following morning when several agents, special master Duvall and an Assistant U.S. Attorney arrived at DeMassa's office around 8:30 a.m. Forty-five minutes later, DeMassa arrived and was shown a copy of the search warrants. He did not see a copy of the affidavit at this time, but was shown paragraph 97 of the affidavit later in the morning. Paragraph 97 contained descriptions of items subject to seizure and was incorporated into the first sentence of the warrant.

The search proceeded in the following manner. Taking one file cabinet at a time, an agent would pull a file and turn it over to the special master if it looked as if the file contained documents subject to seizure. After further consultation with the issuing magistrate, the special master initiated a new procedure under which he alone would review the files to protect privileged communications. Thus, an agent would give Duvall the name of a file and Duvall would pull the file and review it. He would then decide whether to allow the document to be seized or return it to DeMassa. In some cases, Duvall would seal the file for additional review by the magistrate. A search of DeMassa's home was conducted in the same way on April 19.

By April 21, the operation had proceeded through six cartons of documents. DeMassa and the search team then stipulated to continuing the search elsewhere to end the disruption in DeMassa's office. In a written stipulation signed by the special master, the files were taken from the office and moved to the U.S. Courthouse for storage in a locked room. The government was allowed to keep six cartons of documents already searched.

The special master's review continued at the courthouse with DeMassa present and registering objections. Three days later, DeMassa filed a complaint for damages and for a temporary restraining order. The district court ordered all of the materials sealed and stayed the search pending further hearing.

DeMassa's complaint for damages and for the return of his property was joined by some of his clients and several individuals who were not clients, but co-defendants with other DeMassa clients involved in the "Coronado Company", a drug smuggling operation. The complaint alleged several constitutional violations, including charges that the search was unreasonable, and that the seizure of files violated the fifth and sixth amendment rights of clients. The district court held that injunctive relief for the alleged fifth and sixth amendment violations would be inappropriate because remedies for such violations could be sought through suppression motions raised in any subsequent criminal prosecutions. With respect to the fourth amendment claims, the court ruled that the warrant was partially overbroad and that equitable relief was proper if limited to the scope necessary to prevent further constitutional injury. The court did not order the return of all documents. Instead, it retained custody of the documents under seal except for six boxes of documents which the government had already reviewed during the search operation. The court ordered an inspection of the remaining documents by an appointed magistrate whose duty is to recommend to the district court which documents fall within those portions of the warrant which are not overbroad.

The plaintiffs appeal the district court's denial of their motion for the return of all documents. The government has filed a "protective" cross-appeal, arguing that the district court incorrectly invalidated parts of the search warrant.

## II.

The government contends that the district court's denial of injunctive relief is not appealable. Because interlocutory appeals of suppression orders are not generally appealable, *DiBella v. United States*, 369 U.S. 121, 122, 82 S.Ct. 654, 656, 7 L.Ed.2d 614 (1962); *People of Territory of Guam v. Mafnas*, 721 F.2d 683, 685 (9th Cir.1983), DeMassa's motion for the return of property, which the government argues is the functional equivalent of a motion to suppress, constitutes an interlocutory order with the same appealability restrictions as an order denying a suppression motion.

DeMassa argues that a motion for return of property pursuant to Fed.R.Crim.P. 41(e) is not a suppression motion and is therefore independently appealable under 28 U.S.C. § 1292(a)(1).

■ Rule 41(e) is the functional equivalent of a motion to suppress because the rule provides that any property returned "shall not be admissible in evidence at any hearing or trial." The courts have treated motions pursuant to Rule 41(e) as motions to suppress. *Angel-Torres v. United States*, 712 F.2d 717, 719 (1st Cir.1983); *Standard Drywall, Inc. v. United States*, 668 F.2d 156, 158 (2d Cir.), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982). The district court below also recognized DeMassa's claim as a functional suppression motion.[1]

■ Because a motion for return of property pursuant to Rule 41(e), if granted, promises the same effect as a suppression order, courts will apply the same general rule prohibiting interlocutory review of such orders unless the motion for return of property "is solely for return of property and is in no way tied to a criminal prosecution *in esse* against the movant ..." *DiBella v. United States*, 369 U.S. 121, 131–32, 82 S.Ct. 654, 660, 7 L.Ed.2d 614 (1962). In *DiBella*, a defendant moved to suppress evidence seized from his apartment and

sought its return pursuant to Rule 41(e) after arraignment and release under bail. The Supreme Court ruled that the district court's denial of relief was not appealable. "This insistence on finality and prohibition of piecemeal review discourage undue litigiousness and leaden-footed administration of justice, particularly damaging to the conduct of criminal cases." *Id.* at 124, 82 S.Ct. at 656–57. However, when the motion is "fairly severable from the context of a larger litigious process," an order denying the requested relief is immediately appealable. *Id.* at 127, 82 S.Ct. at 658.

■ Thus, when a motion for return of property is independent of a criminal prosecution, a trial court's denial of the motion is subject to immediate appeal because the absence of a related prosecution would render review of the lower court's order impossible. "Denial of review in such circumstances would mean that the government might indefinitely retain the property without any opportunity for the movant to assert on appeal his right to possession." *United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971). In determining whether a motion for return of property is truly independent of an underlying criminal action, courts look to the twin tests of *DiBella*, i.e., whether the motion is solely for return of property and whether the motion is in no way tied to a criminal prosecution against the movant.

■ Without deciding whether DeMassa's motion is *solely* for the return of property, we dismiss the appeal for lack of jurisdiction because there is a criminal proceeding in being against DeMassa.

In *DiBella* the Supreme Court suggested that a prosecution is *in esse* "[w]hen at the time of ruling there is outstanding a complaint, or a detention or release on bail following arrest, or an arraignment, information, or indictment ..." 369 U.S. at 131, 82 S.Ct. at 660. Several circuits have given

---

1. "A movant can omit any reference to 'suppression' in his motion for return of property, as this appellant has done, and claim to satisfy the *DiBella* test of appealability, secure in the knowledge that the granting of his motion for return of property automatically results in suppression." *Standard Drywall, Inc. v. United States*, 668 F.2d at 158.

this test a strict reading and have required that any criminal action against the movant be beyond the investigatory stage and into an accusatory stage by the filing of charges. *In re Grand Jury Proceedings,* 716 F.2d 493, 496 (8th Cir.1983); *Sovereign News Co. v. United States,* 690 F.2d 569 at 571 (6th Cir.1982); *Lucky Messenger Service v. United States,* 587 F.2d 15, 16 (7th Cir.1978). Other circuits have been less restrictive and have deemed a criminal action to be *in esse* before arrest or indictment. Indeed, these cases hold that denial of a motion for return of property is not appealable when a grand jury investigation is pending against the movant. *United States v. Furina,* 707 F.2d 82, 84 (3d Cir. 1983); *Standard Drywall v. United States,* 668 F.2d at 158 (2d Cir.1982); *Imperial Distributors v. United States,* 617 F.2d 892, 896 (1st Cir.1980). This circuit has joined those courts adopting a liberal definition of when a proceeding is *in esse* and has also concluded that an order denying the return of seized property is not appealable when a grand jury proceeding against the movant is underway. *Church of Scientology of California v. United States,* 591 F.2d 533 (9th Cir.1979) *cert. denied,* 444 U.S. 1043, 100 S.Ct. 729, 62 L.Ed.2d 729 (1980).

In *Church of Scientology,* thousands of documents were seized from two Church offices in Los Angeles. Although the Church had not been indicted, eleven of its officers or employees had been indicted by a District of Columbia grand jury. 591 F.2d at 534. Grand Jury proceedings were also pending in New York. The Church attempted to appeal the district court's denial of a motion to return property, but this court dismissed, concluding that "an ongoing criminal proceeding is not to be interrupted by an appeal from an order denying suppression of evidence that may be used in that proceeding." *Id.* at 536.[2]

Here, at the time of the district court's ruling on DeMassa's motion for return of property, a grand jury investigation of DeMassa was underway, inquiring into his possible links to a drug smuggling conspiracy. The grand jury investigation is apparently continuing, and has so far returned indictments against DeMassa for harboring one of the alleged leaders of the drug smuggling operation as a federal fugitive and for mail fraud. If the evidence seized from DeMassa's office is used to prosecute any indictments returned against him, he can move to suppress its use, and, if unsuccessful, appeal the failure to suppress after conviction. Given the ongoing nature of the grand jury investigation into DeMassa's activities, there is a proceeding *in esse* against DeMassa which counsels against the assumption of appellate jurisdiction at this time.

■ Similarly, we must dismiss the government's cross-appeal for lack of jurisdiction. The government itself argues that this court lacks jurisdiction to hear the cross-appeal and labels it a "protective" cross-appeal which was filed only to prevent those parts of the district court's order which are adverse to the government from becoming the law of the case in the event we determined that the district court's order was now appealable. Because interlocutory appeals of injunctive orders under 28 U.S.C. § 1292(a) are not mandatory, *Scarrella v. Midwest Federal Savings and Loan,* 536 F.2d 1207, 1209 (8th Cir.) (per curiam), *cert. denied,* 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976); 9 Moore's Federal Practice § 110.18 (1975), the government may raise its appeal after entry of a final judgment.

---

**2.** In *Church of Scientology,* this court recognized that *DiBella* was not precisely on point because unlike *DiBella,* no indictment had been returned. The court found *DiBella* to be applicable because "[l]ater cases ... carry the *DiBella* principle a little farther." 591 F.2d at 535. Although this court in *Goodman v. United States,* 369 F.2d 166 (9th Cir.1966) assumed jurisdiction over an appeal from an order denying the return of property seized by the Internal Revenue Service, the *Scientology* court found *Goodman* to be easily distinguishable. "Our decision in *Goodman v. United States* ... is different. There, as we said 'there is, and has been, no criminal case pending in any stage.' (p. 168). Not so in the case at bar." 591 F.2d at 536.

■ Moreover, the teaching of the Supreme Court's opinion in *DiBella* persuades us to dismiss the cross-appeal. There, the Court noted that a trial court's ruling that either grants or denies a motion to suppress evidence to be used in an underlying criminal proceeding is " 'but a step in the criminal case preliminary to the trial thereof.'" 369 U.S. at 131, 82 S.Ct. at 660 (quoting *Cogen v. United States*, 278 U.S. 221, 227, 49 S.Ct. 118, 120, 73 L.Ed. 275 (1929)). To allow the government to appeal in this case would conflict with the "general policy against piecemeal appeals [which] takes on added weight in criminal cases, where the defendant is entitled to a speedy resolution of the charges against him." *Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967) (citing *DiBella v. United States*, 369 U.S. 121, 126, 82 S.Ct. 654, 657, 7 L.Ed.2d 614 (1962)). See also *United States v. Hines*, 419 F.2d 173, 175 (10th Cir.1969). The policy against fragmented appeals is especially significant here as the district court ruling at issue did not suppress or return any of the seized evidence. It made a finding of liability under the fourth amendment, but did not actually foreclose the use of particular files in subsequent proceedings. Hence, the order from which the cross-appeal is taken has delayed but not necessarily precluded the use of evidence in criminal proceedings. Under such circumstances, appeal is particularly inappropriate.

The plaintiffs' appeal and the government's cross-appeal are

DISMISSED.

FERGUSON, Circuit Judge, dissenting:

The majority in this case holds that *DiBella* bars the victim of an admittedly unconstitutional search and seizure from appellate review until after the initiation and completion of a potential criminal prosecution on unrelated charges. I respectfully dissent. To reach this conclusion, the court must rewrite the plaintiffs' (hereinafter "DeMassa") complaint, his prayer for relief, his moving papers, and the trial court's determination of the relief accorded as an "injunction." The majority then reveals to the parties what they actually litigated, and, invoking *DiBella*, refuses to accept plainly available appellate jurisdiction, 28 U.S.C. § 1292(a)(1), to review the constitutional questions the parties raised and the district court decided.

The DEA's file-by-file search of DeMassa's law office for "any ... papers" evidencing "illegal transactions" (words of the warrant) provoked this law suit. The agents found and seized, among other things: a Valentine card with a violin on it; a Hustler magazine; an old subscription letter from a legal publication; and 95 cartons of documents. A special master, appointed by the magistrate, assisted the agents. The district court found "[t]he warrants are impermissibly overbroad, 'general' warrants," but failed to return the seized items to DeMassa; instead, the court appointed yet another special master to search through the seized material.

The majority of this court holds that review of the unconstitutional search and seizure and the injunction are barred by *DiBella*. The court, however, fails to answer the two questions that *DiBella* poses in this situation: (1) by what authority can plaintiffs' complaint for return of property and other relief and the district court's order regarding only injunctive relief be recast as a motion to suppress? and (2) to which particular criminal proceeding was the general warrant and the search and seizure of 95 cartons of legal files, a Hustler magazine, a Valentine card with a violin on it, a subscription letter from the San Diego Law Review dated 8/21/78, etc., "related"?

Under *DiBella*, jurisdiction over motions for return of property exists where (1) the motion is solely for the return of seized property; and (2) it is in no way tied to a criminal prosecution *in esse* against the movant. *DiBella v. United States*, 369 U.S. 121, 131–32, 82 S.Ct. 654, 660, 7 L.Ed.2d 614 (1962). The majority in this case makes two erroneous assumptions to achieve its denial of appellate review: (1) the court states that "courts have treated

motions pursuant to Rule 41(e) as motions to suppress," and thus, as unappealable, citing *Angel-Torres v. United States*, 712 F.2d 717, 719 (1st Cir.1983); and (2) the court states that the Ninth Circuit "has also concluded that an order denying the return of seized property is not appealable when a grand jury proceeding against the movant is underway," citing *Church of Scientology of California v. United States*, 591 F.2d 533 (9th Cir.1979) *cert. denied*, 444 U.S. 1043, 100 S.Ct. 729, 62 L.Ed.2d 729 (1980). From the first premise, the majority reasons that DeMassa really filed a motion to suppress, and therefore, that motion may not be appealed now. From the second premise the majority reasons that if DeMassa is the subject of *any* grand jury proceeding or any indictment, this particular motion may not be appealed now. Both premises are incorrect.

## I. NEITHER THE NINTH CIRCUIT NOR THE SUPREME COURT EQUATE MOTIONS FOR RETURN OF PROPERTY WITH MOTIONS TO SUPPRESS.

The majority cites *Angel-Torres* for the proposition that courts automatically treat motions for return of property as motions to suppress, but neither *Angel-Torres*, Ninth Circuit cases, nor the Supreme Court have so held. In fact, *Angel-Torres* held that the plaintiff's motion for return of property under Rule 41(e) *was* an appealable motion for return of property, and *not* a motion to suppress: "[I]t [is] reasonable in context to consider their motions as primarily seeking the return of their property. Since Rule 41(e) automatically 'suppresses' as evidence any property that is returned, we cannot be too technical about this point without destroying the *DiBella* exception." 712 F.2d at 719 (citations omitted). Thus, the *Angel-Torres* court preserved the *Di-Bella* exception by explicitly refusing to equate the two types of motions. Ninth Circuit cases also hold that appellate jurisdiction over denial of motions for return of property exists, even when the complaint prays for suppression as well as a return of property, thus either explicitly or implicitly

holding that motions for return of property are not the equivalent of motions to suppress. *VonderAhe v. Howland*, 508 F.2d 364, 368 (9th Cir.1975) (court has jurisdiction over appeal from dismissal of motion for return of property, suppression of evidence, for injunctions, damages and a hearing when no criminal action against movant is pending); *Freedman v. United States*, 421 F.2d 1293, 1294 (9th Cir.1970) (court may have jurisdiction over appeal from dismissal of motion entitled "Motion to Quash Search Warrant (If Any), To Suppress and Return Items Seized," pursuant to Rule 41(e) if it is solely for the return of property and has no relation to the indictment under which Freedman was arrested), *cert. denied*, 404 U.S. 992, 92 S.Ct. 538, 30 L.Ed.2d 544 (1971); *Selinger v. Bigler*, 377 F.2d 542, 542 n. 1 (9th Cir.1967) (court has jurisdiction over denial of motion to return copies of records and to suppress their use as evidence under 41(e)); *Goodman v. United States*, 369 F.2d 166, 167–68 (9th Cir.1966) (court has jurisdiction over appeal from dismissal of complaint seeking both return of copies of records and suppression of their use as evidence).

The Supreme Court has also upheld jurisdiction over appeals from the denial of motions for return of property, even when plaintiffs prayed, at the same time, for suppression of evidence. In *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), petitioner challenged various Internal Revenue Service seizures on Fourth Amendment grounds. He sought the return of automobiles, the return of photocopies of books and records, and suppression of the automobiles as evidence and of all evidence obtained from the books and records. Far from equating the prayer for suppression with the prayer for the property's return, the Supreme Court considered the merits of the return of property claim (as well as the general and punitive damages claims), and declined to adjudicate only the suppression issue. In severing the prayer for return from the prayer for suppression, the Court stated:

The books and records were returned, and the photocopies concededly have been destroyed; that claim, thus, is moot. We have decided the issue of the legality of the seizure of the automobiles [whose return petitioner sought] adversely to petitioner. The suppression issue, as to the books and records, obviously is premature and may be considered if and when proceedings arise in which the Government seeks to use the documents or information obtained from them.

*Id.* at 359, 97 S.Ct. at 632 (citations omitted).

Even more recently, the Supreme Court noted the appropriateness of using a Rule 41(e) motion to acquire immediate review over the seizure of property in *United States v. $8,850 in United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 2014, 76 L.Ed.2d 143 (1983). In that case, the Court mentioned Rule 41(e) as a vehicle to obtain prompt judicial review of property seizures made under civil forfeiture laws even though the eventual criminal prosecution related to the specific property was forseeable, if not highly probable.

Thus, neither the Supreme Court nor this circuit has treated motions for return of property as motions to suppress. They have treated them as appealable motions for the return of property when they moved for the return of property and no related criminal action against the movant was pending.

The cases cited by the Government and the majority do not hold to the contrary. In the cases where the appellate court held that it did not have jurisdiction, the motions from which appeal had been taken were not motions primarily for the return of proper-

ty. They were—explicitly—motions to suppress, and their primary purpose was to suppress evidence. *Church of Scientology of California v. United States,* 591 F.2d at 534 (motion requested suppression, and the "principal reason for [the Church's] motion has been and is to prevent the use of any of the seized papers for the purpose of obtaining indictments against either the Church or its officials or employees"); *People of the Territory of Guam v. Mafnas,* 721 F.2d 683 (9th Cir.1983) (motion to suppress); *United States v. Woodson,* 490 F.2d 1282, 1283 (9th Cir.1973) (motion was entitled "MOTION FOR THE RETURN OF SEIZED PROPERTY AND THE SUPPRESSION OF EVIDENCE," and its essential character was a suppression motion); *Hill v. United States,* 346 F.2d 175, 177–78 (9th Cir.1965) (records had already been returned to movant, thus appeal was only from portion of district court judgment denying motion to suppress). DeMassa's motion prays for the return of his 95 cartons of legal files and other property, for injunctions providing DeMassa access to his documents, and for declaratory relief and monetary damages. It thus moves, at least in severable part, for return of property, just as the motion in *G.M. Leasing* did; it is therefore appealable under *DiBella.*

While the courts have never equated motions for the return of property with motions to suppress, they have acknowledged the doubt involved in characterizing motions as one or the other. *Church of Scientology of California,* 591 F.2d at 534. When in doubt, a court may look to the explicit title of the moving papers to characterize the motion. *United States v. Woodson,* 490 F.2d at 1283.[1] DeMassa's

1. *See also Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), in which the Court applied the principle that the plaintiff is the master of his or her own lawsuit in the context of recognizing district court jurisdiction over a complaint that stated violations of the fourth and fifth amendments. *Bell* acknowledged district court jurisdiction over a complaint drafted to state a Constitutional cause of action. The Court held that jurisdiction exists unless one of two exceptions is met: "that a suit may sometimes be dismissed for want of juris-

diction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 682–83, 66 S.Ct. at 776. This rationale—that plaintiffs are masters of their own complaints, unless the jurisdictional allegations are insubstantial or frivolous—is similar to the rationale of *DiBella* —that plaintiffs who truly seek return of property in collateral proceedings are the masters of

complaint bears the title, "Complaint for Injunctive and Declaratory Relief and For Damages, and For Temporary Restraining Order."[2] This title, unlike the title in *Woodson*, suggests that this motion seeks return of property.

To determine whether the motion is primarily for the return of property rather than one to suppress, a court may also look to "[t]he 'essential character and the circumstances under which [the motion] is made' [to] determine whether a motion is an independent proceeding or merely a step in the criminal case." *Goodman v. United States*, 369 F.2d at 168 (quoting *Carroll v. United States*, 354 U.S. 394, 405 n. 17, 77 S.Ct. 1332, 1338 n. 17, 1 L.Ed.2d 1442 (1957)). DeMassa's motion was made under a state of seige. The character of the motion was a challenge to that seige. Under the essential character and circumstances test, therefore, the motion remains one to return property and to enjoin the continuing Fourth Amendment violation in mid-search, not one for the suppression of evidence.

Other cases in which plaintiffs suffered a continuing violation of their Fourth Amendment rights bolster the conclusion that *injunctive* relief (not suppression) is the appropriate immediate remedy and, thus, appellate review of that injunctive remedy lies. *See, e.g., Lankford v. Gelston*, 364 F.2d 197, 201–02 (4th Cir.1966) (cited with approval in *Allee v. Medrano*, 416 U.S. 802, 816 n. 9, 94 S.Ct. 2191, 2200 n. 9, 40 L.Ed.2d 566 (1974)). The character of DeMassa's motion is akin to that of the Black families in *Lankford* who sought, and received from the appellate court, injunctive relief against the threat of a continuing Fourth Amendment violation. If review is denied in this case, the court would be fostering the unthinkable anomaly that the appellate court's injunction rejected in *Lankford:* "It would be a grotesque irony if our courts protect only against the unlawful search which actually uncovers con-

traband (by the exclusionary rule), while offering no relief against an admittedly unlawful pattern and practice affecting hundreds of innocent homeowners.'" *Lankford*, 364 F.2d at 202 (quoting Brief of Appellants, p. 38).

The plain language of Federal Rule of Criminal Procedure 41(e) also implies that return of property and suppression motions are not generally equivalents, because it defines when a motion for return of property becomes, also, a motion to suppress: "If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12." DeMassa's motion came on for hearing in the district court before any indictment or information had been filed against him or any of the other plaintiffs. To this day, no indictment or information related to this search has been filed. The plain language of the rule dictates that until—and unless—that time comes, the 41(e) motion is a motion for return of property. The Government apparently concedes that such a time has not arrived. Defendant's Brief at 20 (the post-hearing, January 27, 1984, indictments that the grand jury returned against DeMassa were "based on evidence entirely independent of the DeMassa search warrant").

## II. THE GENERAL SEARCH IS NOT RELATED TO ANY PARTICULAR CRIMINAL PROSECUTION AGAINST DeMASSA OR THE OTHER PLAINTIFFS.

In order for a district court order regarding return of property to be appealable, it must meet the second prong of *DiBella's* test as well: the motion must be "in no way tied to a criminal prosecution *in esse* against the movant." 369 U.S. at 132, 82 S.Ct. at 660; *Angel-Torres v. United States*, 712 F.2d at 719. The majority asserts that *Scientology* stands for the prop-

---

*their* complaints, unless the motion is really an interlocutory motion to suppress masquerading as something else to secure jurisdiction.

2. The district court's order similarly bears the title, Order Granting Preliminary Injunction. E.R. at 224.

osition that an ongoing grand jury investigation meets the "criminal prosecution *in esse*" standard.

The question, however, is not simply whether any criminal action is pending, but whether a criminal action that has a "relation to" or a "connection with" the seizure is pending. *See Freedman v. United States,* 421 F.2d at 1295. The defendants fail to meet this standard, because they concede that the only indictment that was returned against DeMassa was based on evidence wholly unrelated to the seizure.

In *Freedman v. United States,* the court confronted the same jurisdictional issue. It concluded:

> [T]here is nothing in the record before this court either in the pleadings or the affidavits—there is no record of any testimony being taken at all—from which this court can determine if there was anything before the Central District Court to show any connection whatsoever between the seized $13,000 note books and documents, and the crime of conspiracy to smuggle, sell and conceal narcotic drugs in violation of U.S.C. § 174 as charged in the indictment filed in the Southern District of California.
>
> This court, therefore, is unable to reach any conclusion on either the question of its jurisdiction to hear this appeal or upon the basic issue of abuse or nonabuse of discretion on the part of the Central District Court.

421 F.2d at 1295. In contrast, defendants in this case admit that none of the evidence seized in the challenged search was related to the indictment against DeMassa. This court, therefore, should be able to reach and decide the jurisdictional issue in DeMassa's favor.

Additionally, there is no connection between the seizure and the grand jury investigation that is sufficient to deny appellate jurisdiction. Although the lack of relation between the seizure and a pending criminal prosecution makes jurisdiction appropriate in DeMassa's case, it is also unclear whether *Scientology* really *holds* that a grand jury investigation meets the "criminal pros-

ecution *in esse*" standard. The court in *Scientology* first decided that "the principal reason for [the Church's] motion has been and is to prevent the use of any of the seized papers for the purpose of obtaining indictments against either the Church or its officials or employees." 591 F.2d at 534. Thus, the moving party in that case failed to meet the *first* prong of the *DiBella* exception standard. In turning to the second prong of the standard, the court candidly asserted "the matter is not free from doubt," *id.* at 534, and "[w]e recognize that *DiBella* is not directly in point. While the grand jury had been investigating the Church, there has been no complaint, arraignment, information or indictment against it, nor any arrest." *Id.* at 535. Finally, the court noted that the pending criminal proceedings in that case included: "an ongoing proceeding before at least one grand jury, in the District of Columbia ... another proceeding before a Federal grand jury in New York ... [and] a proceeding pending in Great Britain to extradite two of the persons indicted by the District of Columbia grand jury, and some of the seized papers are being used in that proceeding." *Id.* at 536. Thus, the *Scientology* court was considering a motion to suppress, not a motion for return of property, when it went on, perhaps in *dicta*, to characterize these proceedings as *in esse*. Further, it characterized not just one grand jury but three related criminal proceedings as *in esse*. The motion therefore would not have been appealable even if these proceedings were not *in esse*.

*Scientology*'s dicta denying the appealability of motions for return of property when a grand jury investigation is proceeding also runs counter to the line of Ninth Circuit cases that hold a motion for return of property independent and appealable unless a *criminal action* related to the seized materials is actually pending. *VonderAhe v. Howland,* 508 F.2d at 368 (no "criminal action" pending); *Freedman v. United States,* 421 F.2d at 1295 (court unable to decide the jurisdictional question in the absence of any evidence in the record as to

whether the material seized was related to the "crime" that had already been charged by indictment); *Goodman v. United States*, 369 F.2d at 168 (no "criminal case pending").

Even if a grand jury investigation is a criminal prosecution *in esse,* contra *Sovereign News Co. v. United States*, 690 F.2d 569, 571 (6th Cir.1982); *Mr. Lucky Messenger Service, Inc. v. United States*, 587 F.2d 15, 16 (7th Cir.1978), the grand jury investigation in this case is not connected sufficiently to the seizures. The unconstitutionality of the general warrant and the broad scope of the seizures make them unrelated to any *particular* pending prosecution.

The district court found that the Fourth Amendment's particularity requirement was violated by the overbreadth of the warrant, including the generality of the target crimes listed: "narcotics and other illegal transactions." Memorandum of Decision at 23–24. In *VonderAhe v. Howland*, 508 F.2d at 366–67, the court held that warrants based on similarly general grounds were unconstitutional, exploratory, "general" warrants. Because the general warrant served on DeMassa "restricts" the objects of search and seizure to all "other illegal transactions," it fails to relate the search to any particular criminal prosecution against DeMassa or the other plaintiffs.

Nor was the generality of the warrant, and thus the lack of connection between the warrant, search or seizure and a pending criminal proceeding, cured by the manner of its execution. Appointment of a special master during the initial search and appointment of a post-seizure magistrate both failed to render the search any less "general." Both exacerbated the initial violation that the Fourth Amendment originally sought to prevent.

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948) (footnote omitted) (emphasis supplied). The judicial officer who presides over, and participates in, the search loses that detachment and neutrality. *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326, 99 S.Ct. 2319, 2324, 60 L.Ed.2d 920 (1979). But yet another evil animated the framing of the Fourth Amendment: "the Framers of the Fourth Amendment were deeply suspicious of warrants; in their minds the paradigm of an abusive search was the execution of a warrant not based on probable cause. The fact that colonial officers had magisterial authorization of their conduct when they engaged in general searches surely did not make their conduct 'reasonable.' " *United States v. Leon*, —— U.S. —— at ——, 104 S.Ct. 3430, at 3453, 82 L.Ed.2d at 722 (Stevens, J., concurring and dissenting) (1984).

The oversight of special masters at the scene of a search and seizure that has already been declared overbroad thus fails to cure the problem. It aggravates it. It fails to remedy the initial general warrant, with its general description of suspected crimes and objects of seizure. The general search and seizure thus are still unrelated to any particular criminal prosecution and this court should hear the appeal.

### III. CONCLUSION.

*DiBella's* preclusion of piecemeal review of interlocutory motions in a criminal prosecution was never meant to preclude review in a situation like this. *DiBella's* language and logic exempt exactly this type of situation from its foreclosure of interlocutory review.

The plain language of the *DiBella* exception demands that appeal be allowed in a case such as DeMassa's. Rule 41(e) provides in part: "If the motion [for return of property] is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial." Under

the logic of the majority, there can be *no* motion for return of property—however captioned, however characterized, and however unrelated to any pending criminal prosecution—that would be appealable, because the motion could never be solely for the return of property. Instead of applying the *DiBella* exception, the majority effectively extinguishes it. *See In Re Grand Jury Proceedings,* 716 F.2d 493, 495 (8th Cir.1983).

Calling a motion for return of property a motion to suppress in order to abdicate jurisdiction over an appeal on the merits also grossly misstates the supplementary and deterrent purposes to which the exclusionary rule has been relegated. If the motion to suppress, or the exclusionary rule, is now merely a " 'judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the person aggrieved,' " *United States v. Leon,* —— U.S. —— at ——, 104 S.Ct. 3405 at 3412, 82 L.Ed.2d —— (1984) (quoting *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974)), then what right does the aggrieved person retain? It must be the right to vindicate the deprivation of personal, constitutional rights through traditionally available remedies, like damages, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 408, 91 S.Ct. 1999, 2011, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring), and injunctions. *E.g., Lankford v. Gelston,* 364 F.2d 197, 201–03. Retention of these remedies is particularly important in DeMassa's case, where the infringement also encompasses the host of constitutional rights involved in the government taking property and assaulting the victim's entire law practice and livelihood. *Cf. United States v. Offices Known as 50 State Distributing Co.,* 708 F.2d 1371, 1374–75 (9th Cir.1983) (only if fraud permeates an entire business, and is not segregable, can a warrant authorize a general seizure of all business records), *cert. denied,* —— U.S. ——, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984).

By rewriting the complaint for injunctive relief and recasting the injunction as a motion to suppress, the majority does away with *DiBella's* exception. It also blurs the distinction between the purposes of the exclusionary rule today—to supplement, to deter generally, but not to vindicate personal rights—and the purposes of traditional forms of relief—to provide that personal right to which other remedies are supplemental. The inevitable outcome of this course of action is that criminal defendants may retain the exclusionary remedy, but DeMassa can only wait in his empty office.