298 F.3d 804
 Daniel ANDERSEN and Lorenzo J. Lamantia, individually and on behalf of the members of the Institute for Global Prosperity, Plaintiffs-Appellants,
v.
UNITED STATES of America, Named and Unnamed Agents of the Internal Revenue Service Criminal Division, IRS Special Agent Thomas Wourgiotis, IRS Special Agent Tom Oenbrink, IRS Special Agent Paula Lurvey, IRS Special Agent Jeffrey Holm, IRS Special Agent Julie Lau, IRS Special Agent Charles Phillips, IRS Special Agent Judy O'Briant and Shoshanna Szuch, Defendants-Appellees.
 No. 01-56900.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 11, 2002.
 Filed July 30, 2002.
 
 William A. Cohan, William A. Cohan, P.C., San Diego, CA, for the plaintiffs-appellants.
 Gretchen M. Wolfinger, Tax Division, U.S. Department of Justice, Washington, D.C., for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California, Christina A. Snyder, District Judge, Presiding, D.C. No. CV-01-08427-CAS.
 Before REINHARDT and GRABER, Circuit Judges, and HUNT,* District Judge.
 Opinion by Judge Graber; Dissent by Judge Reinhardt.
 OPINION
 GRABER, Circuit Judge.
 
 
 1
 Plaintiffs Andersen and LaMantia, on behalf of themselves and the members of the Institute for Global Prosperity (IGP), sued the United States and its agents. Plaintiffs alleged that the government conspired to violate their constitutional rights and those of IGP's members when the government executed eight search warrants and seized, among other things, IGP's membership lists and literature. Plaintiffs moved for an injunction (1) to prevent the government from conducting further searches or seeking further information, (2) to prevent the government from using the information obtained from search warrants already executed, and (3) to require the government to return the seized property. The district court denied the motion. We dismiss Plaintiffs' appeal for lack of jurisdiction.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 Plaintiffs are leaders of IGP, an organization that distributes "educational, political, religious and philosophical materials in the form of books and CDs, much of which is critical of the United States' financial and taxing policies." Plaintiffs and other IGP leaders are currently under investigation[1] for tax-related crimes.
 
 
 3
 Between February 28, 2001, and September 25, 2001, the government executed eight search warrants on Plaintiffs' residences and on IGP offices across the country. The warrants sought a broad range of financial records. The warrants also sought material under the heading "[IGP] related records/evidence," including
 
 
 4
 applications for membership, membership cards, membership agreements, confidentiality agreements, promotional literature (letters, flyers, brochures, videotapes and audiotapes), scripts used during telephone solicitations, newspaper advertisements, lists of names or addresses or telephone numbers (or other identifying data) of members, prospective members or Qualified Retailers, records reflecting attendance at [IGP] seminars, videotapes/audiotapes of [IGP] leaders/members at [IGP] seminars, and audiotapes of [IGP programs].
 
 
 5
 On September 28, 2001, Plaintiffs filed this action in federal district court, alleging claims of (1) conspiracy to violate Plaintiffs' First and Fourth Amendment rights and the First Amendment rights of members and associates of IGP and (2) "willful, wanton and malicious violations" of Plaintiffs' individual Fourth Amendment rights.
 
 
 6
 At the same time, Plaintiffs filed a motion for a temporary restraining order and a preliminary injunction. They sought to prohibit the United States from
 
 
 7
 (a) conducting any further searches and seizures or otherwise seeking or acquiring indicia of association with plaintiffs and/or IGP's members and/or associates; and (b) any use or dissemination to any person, entity or agency whatsoever of any membership and/or associates' identities or information already obtained during the searches and seizures at issue
 
 
 8
 ....
 
 
 9
 Plaintiffs also sought a permanent injunction ordering the return of all IGP-related property that had been seized pursuant to the warrants.
 
 
 10
 The district court denied the request for a temporary restraining order and, later, denied Plaintiffs' motion for a preliminary injunction. Plaintiffs timely filed a notice of appeal.
 
 DISCUSSION
 
 11
 As a threshold matter, we must decide whether we have jurisdiction to review the district court's denial of the preliminary injunction.[2] Generally, we may review only final orders of the district court. 28 U.S.C. § 1291.
 
 
 12
 The denial of a preliminary injunction is one of the few kinds of appealable interlocutory orders. 28 U.S.C. § 1292(a)(1). However, here, Plaintiffs' motion sought relief typically provided by Federal Rule of Criminal Procedure 41(e). Although styled as an action for an "injunction," perhaps because of the general rule noted above, the motion in substance sought the return of property that had been seized pursuant to a warrant. Rule 41(e) controls the procedure for obtaining that form of relief. The distinction between injunction proceedings in general and Rule 41(e) motions in particular is important, because the denial of a motion under Rule 41(e) usually is not appealable. DiBella v. United States, 369 U.S. 121, 131-32, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).
 
 
 13
 The substance of the motion, not its form, controls its disposition. See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 880 (9th Cir. 2000) ("[T]he label attached to a motion does not control its substance." (citation and internal quotation marks omitted)); Hasbrouck v. Texaco, Inc., 879 F.2d 632, 635 (9th Cir.1989) ("The nomenclature the movant uses is not controlling. This court must decide whether a motion, however styled, is appropriate for the relief requested." (citations omitted)). In accordance with that principle favoring substance over form, we have construed a motion that sought injunctive relief of the kind provided by Rule 41(e) as a Rule 41(e) motion, notwithstanding the motion's label. See, e.g., DeMassa v. Nunez, 747 F.2d 1283, 1291 (9th Cir.1984) (Ferguson, J., dissenting), reh'g granted on other grounds, 770 F.2d 1505 (9th Cir.1985) (per curiam) (DeMassa I and DeMassa II, respectively). Because Plaintiffs sought the relief provided by Rule 41(e), we construe their motion as one properly brought under that rule.
 
 
 14
 The Supreme Court has held that the courts of appeal have jurisdiction to review decisions on Rule 41(e) motions "[o]nly if the motion is solely for return of property and is in no way tied to a criminal prosecution in esse against the movant." DiBella, 369 U.S. at 131-32, 82 S.Ct. 654.[3] As we recently recognized:
 
 
 15
 This rule reflects the careful balancing between two competing interests: On the one hand, appellate courts should act to prevent the deprivation of seized property that is sorely needed when those deprived have no other avenues for relief. On the other hand, the appeal of a lower court's decision denying a return of property can add uncertainty and delay to an ongoing parallel criminal proceeding, especially if the legality of the search is the critical issue in the criminal trial.
 
 
 16
 Bridges v. United States (In re 3021 6th Ave. N.), 237 F.3d 1039, 1041 (9th Cir. 2001).
 
 
 17
 In this case, Plaintiffs' motion seeks the return of the seized property but also asks for significant additional relief. And, there is an ongoing criminal investigation that targets Plaintiffs. In the circumstances, Plaintiffs fail both parts of DiBella's test, and they therefore cannot establish the exception to the general rule that motions like theirs are unappealable.
 
 
 18
 As for the first criterion, in addition to demanding the return of their property, Plaintiffs seek to enjoin the IRS from conducting any future searches or seizures. Further, they seek to enjoin the IRS from using the material that already was seized. By asking for exclusion of evidence and by seeking to prevent any further searches, the complaint seeks relief beyond "solely" the return of property.
 
 
 19
 As for the second criterion, an ongoing grand jury investigation constitutes a "`criminal prosecution in esse'" under DiBella. DeMassa I, 747 F.2d at 1291 (Ferguson, J., dissenting) (quoting DiBella, 369 U.S. at 132, 82 S.Ct. 654). In this circuit, rulings on motions for return of property are unappealable when there is an ongoing grand jury investigation. Id.
 
 
 20
 Indeed, DeMassa I directly controls this case.[4] In DeMassa I, we construed a motion for a preliminary injunction as a Rule 41(e) motion. Because one of the plaintiffs was the target of an ongoing grand jury investigation, we held that we lacked jurisdiction to review the order denying injunctive relief. See id. at 1287 (stating that "[t]his circuit has joined those courts adopting a liberal definition of when a proceeding is in esse and has also concluded that an order denying the return of seized property is not appealable when a grand jury proceeding against the movant is underway").
 
 
 21
 DeMassa I clearly contemplates that grand jury proceedings constitute criminal proceedings for the purpose of determining appealability. This interpretation is consistent with DiBella, which held that "the mere circumstance of a pre-indictment motion does not transmute the ensuing evidentiary ruling into an independent proceeding begetting finality even for purposes of appealability. Presentations before a ... grand jury are parts of the federal prosecutorial system leading to a criminal trial." DiBella, 369 U.S. at 131, 82 S.Ct. 654 (citations omitted) (emphasis added).
 
 
 22
 Plaintiffs ask for an exception to the rule of nonappealability on the ground that their First Amendment rights allegedly have been infringed. Although DiBella and DeMassa dealt with Fourth Amendment rights, the broad proscription against interlocutory review that those cases establish applies with equal force to First Amendment claims.
 
 
 23
 We recognize that First Amendment rights may be chilled when the government seizes information about the members of an organization. NAACP v. Alabama, 357 U.S. 449, 462-63, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Nonetheless, for three reasons, we conclude that the Supreme Court would apply the DiBella rule even to a First Amendment claim.
 
 
 24
 First, the Court's logic in DiBella retains its efficacy in this context. The Court gave two reasons for refusing to create an exception to the general finality rule: The Court was concerned with impeding the criminal justice process, including the Sixth Amendment right to a speedy trial, 369 U.S. at 124, 126, 82 S.Ct. 654, and it concluded that Rule 41(e) motions are not independent of the associated criminal investigation and thus not severable from the "larger litigious process," id. at 127, 82 S.Ct. 654 (citation and internal quotation marks omitted). In other words, permitting an appeal from the district court's decision on a Rule 41(e) motion is likely to affect the integrity of the investigation and potential criminal trial. Id. These concerns are equally valid whatever the specific nature of the constitutional right that the potential criminal defendant seeks to vindicate.
 
 
 25
 Second, the bar against an interlocutory appeal means only that review on the merits is postponed, not foreclosed. Plaintiffs can obtain appellate review on the merits of their claims when the district court has taken final action, either in the context of a criminal conviction or otherwise.
 
 
 26
 Third, we note by way of analogy the Supreme Court's application of a procedural bar even in the face of substantial First Amendment claims. In United States v. American Friends Service Committee, 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974) (per curiam), the Supreme Court reversed an injunction that had been granted on First Amendment grounds. Employees of the American Friends Service Committee, who were Quakers, obtained an injunction that prevented the government from enforcing mandatory tax-withholding requirements. Id. at 9, 95 S.Ct. 13. Because of their religious objection to the war in Vietnam, the employees contended that the Free Exercise Clause protected their right to express those beliefs by refusing to pay a portion of their taxes. Id. at 7-8, 95 S.Ct. 13. Despite the strong First Amendment interests at stake, the Court imposed a statutory bar against equitable relief. Construing the Anti-Injunction Act, 26 U.S.C. § 7421(a),[5] the Court reaffirmed the principle that "the constitutional nature of a taxpayer's claim" under the First Amendment was irrelevant to its analysis. Am. Friends, 419 U.S. at 11, 95 S.Ct. 13 (citation and internal quotation marks omitted).
 
 
 27
 We express no opinion on whether the Anti-Injunction Act would bar Plaintiffs' suit on the merits; it is not clear whether it would or would not. See Church of Scientology v. United States, 920 F.2d 1481, 1486 (9th Cir.1990) (noting that the Act extends to suits that target any activity that is "`intended to or may culminate in the assessment or collection of taxes'" (quoting Blech v. United States, 595 F.2d 462, 466 (9th Cir.1979))). However, analogizing from American Friends, we conclude that no exception to the procedural bar may be made here on the ground that Plaintiffs assert First Amendment as well as Fourth Amendment interests.
 
 
 28
 Although the dissent emphasizes the compelling nature of First Amendment claims, our jurisdiction is bounded by the clear rule in DiBella, as interpreted by this court in DeMassa. We are not free to ignore those precedents defining our jurisdiction simply because the subject matter of the underlying complaint tempts us to do so. That is true even in the Younger abstention context, on which the dissent relies by analogy. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (limiting Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), to its facts and abstaining despite an underlying First Amendment claim).
 
 CONCLUSION
 
 29
 Plaintiffs' motion for a preliminary injunction was, in substance, a motion for return of property under Federal Rule of Criminal Procedure 41(e), but it sought additional relief and was tied to an ongoing grand jury investigation. Therefore, the district court's order denying the injunction is not a final, appealable order, and we lack jurisdiction to review it.
 
 
 30
 APPEAL DISMISSED.
 
 
 
 Notes:
 
 
 *
 The Honorable Roger L. Hunt, United States District Court for the District of Nevada, sitting by designation
 
 
 [1]
 At oral argument, the parties agreed that we should assume for the purpose of decision that there is a grand jury investigation in progress. Although the government makes no factual representations on this issue, we so assumeSee Fed.R.Crim.P. 6(e) (providing for secrecy of grand jury proceedings).
 
 
 [2]
 For jurisdictional purposes, we are obliged to determine the finality of a decision on appealRegula v. Delta Family-Care Disability Survivorship Plan, 266 F.3d 1130, 1136-37 (9th Cir.2001). We review de novo questions of our jurisdiction. Didrickson v. United States Dep't of Interior, 982 F.2d 1332, 1337 (9th Cir.1992).
 
 
 [3]
 The dissent relies on two brief passages inDiBella, 369 U.S. at 124-26, 82 S.Ct. 654, to argue that it "do[es] not set forth an absolute rule prohibiting all interlocutory appeals in cases involving criminal proceedings." Dissent at 812. In the cited passages, however, the DiBella Court was merely describing, as background, extant exceptions to the finality rule, none of which applies here. The Court went on to state the applicable and clear two-part test that we summarize in the text above. 369 U.S. at 131-32, 82 S.Ct. 654.
 
 
 [4]
 InDeMassa I, we held that we lacked jurisdiction to review the Fourth Amendment claims of a lawyer whose offices had been searched and whose files had been seized. Because that lawyer was the target of an ongoing grand jury investigation, we concluded that DiBella controlled, and we had no jurisdiction. 747 F.2d at 1287. However, in DeMassa II, we held that we did have jurisdiction to review the Fourth Amendment claims of the clients who were also individually named plaintiffs. 770 F.2d at 1506. We reasoned that those clients were "strangers to any potential indictments" and, thus, their claims were reviewable under DiBella because there was no criminal proceeding in esse. Id.
 The clients in DeMassa II were named plaintiffs in the action. By contrast, the IGP is not a plaintiff, nor are any individual members named as plaintiffs except Andersen and LaMantia. Andersen and LaMantia purportedly assert rights on the membership's behalf. Without jurisdiction over any of Andersen's or LaMantia's claims, however, we cannot assert jurisdiction over the membership's potential derivative claims, even if Andersen and LaMantia otherwise would be entitled to bring such claims in a representative capacity.
 
 
 [5]
 Subject to certain statutory exceptions not applicable here, the Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a)
 
 
 REINHARDT, Circuit Judge, dissenting:
 
 31
 The majority asserts that it merely applies the clear rule of DiBella and DeMassa to the case at hand. The rule is hardly clear and in my view is not applicable to claims of serious, imminent, and irreparable violations of First Amendment rights. Accordingly, I dissent.
 
 
 32
 The majority treats the appellants' motion as simply a "functional" 41(e) motion that, under the law of our circuit, is tied to an ongoing criminal proceeding and thus is unappealable. In so doing, the majority fails to consider adequately the nature and importance of the subject matter of the appellants' motion. The appellants seek to enjoin the government from seizing and making use of their membership lists — lists of the names and other identifying information regarding all current and prospective members of the Institute for Global Prosperity (IGP).
 
 
 33
 Membership lists have a long and unique history in our constitutional jurisprudence, and the seizure of such items implicates the rights of freedom of association and freedom of speech under the First Amendment. In NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the government action at issue, as in this case, was the compelled disclosure of the organization's membership lists. Id. at 460, 78 S.Ct. 1163. The Court stated that "[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective ... restraint on freedom of association." Id. Thus, the Court recognized that the destruction of members' anonymity may hamper their individual rights to associate freely. See Gibson v. Fla. Legislative Investigation Comm., 372 U.S. 539, 544, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963) (stating that right of association includes protection of privacy of association); NAACP, 357 U.S. at 462, 78 S.Ct. 1163 ("This Court has recognized the vital relationship between freedom to associate and privacy in one's associations.").
 
 
 34
 The concern for the protection of the right of free association, and the ability to maintain one's privacy in that association, is especially present in political, economic, and religious organizations, NAACP, 357 U.S. at 460, 78 S.Ct. 1163, including tax protester groups. First Nat'l Bank v. United States, 701 F.2d 115, 118 (10th Cir.1983) ("The chilling effect of a summons served by an IRS agent to obtain membership records of a tax protester group ... [is] readily apparent.") (internal quotation marks omitted). It is especially important that we be vigilant in our protection "when a group espouses dissident beliefs." NAACP, 357 U.S. at 462, 78 S.Ct. 1163. Accordingly, a government action that directly, or indirectly, limits the freedom to associate "is subject to the closest scrutiny." Id. at 461, 78 S.Ct. 1163; see also Bates v. Little Rock, 361 U.S. 516, 523, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960) (stating that associational rights are protected "from being stifled by more subtle governmental interference").
 
 
 35
 Here, the appellants, who head a tax protester organization, assert their rights to association and freedom of speech — rights that we must be particularly vigilant to protect against unwarranted governmental intrusion. They allege that those rights are currently being violated, that there will be additional violations in the near future, and that the government's actions, if unreviewed by this court, will have an immediate and serious chilling effect upon the organization and its members. The only question addressed in the majority opinion, and in this dissent, is whether we have the ability to consider appellants' constitutional claims now, or whether they must await appellate review for an indefinite period of time, perhaps for a significant number of years, by which time the irreparable damage that is attendant on the alleged First Amendment violation will likely have been done. The majority concludes that "later" — no matter how much later — is good enough. I disagree.
 
 
 36
 As stated by the majority, DiBella and DeMassa together stand for the proposition that a motion for the return of property is generally not appealable on an interlocutory basis if it is tied to a "criminal prosecution in esse against the movant." DiBella v. United States, 369 U.S. 121, 132, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); see also DeMassa v. Nunez, 747 F.2d 1283, 1287 (9th Cir.1984). The stated purpose behind this rule is to avoid interference with ongoing criminal cases, as well as to discourage piecemeal litigation and delays in the administration of justice. DiBella, 369 U.S. at 124, 82 S.Ct. 654.
 
 
 37
 The majority asserts that its decision is compelled by DiBella, as interpreted by DeMassa. I disagree. Neither DiBella nor DeMassa addressed the First Amendment, and neither case involved membership lists. Nor did the petitioner in either case seek an injunction to prevent the further seizure of First Amendment materials, as do the appellants here. To the contrary, both DiBella and DeMassa involved petitioners who instituted collateral civil proceedings to assert violations of their Fourth Amendment rights resulting from searches and seizures of drugs and related materials and stolen property, as well as a gun and devices used in a robbery. See DiBella, 369 U.S. at 122, 82 S.Ct. 654 and 290 F.2d 166, 167 n. 1 (5th Cir.1961); DeMassa, 747 F.2d at 1285 (also asserting Fifth and Sixth Amendment). The Supreme Court and this court have said that because Fourth Amendment questions arise regularly in criminal trials and because their resolution may determine the outcome of the criminal matter, they represent "but a step in the criminal case" and should ordinarily be resolved in the course of the criminal proceedings. DiBella, 369 U.S. at 131-32, 82 S.Ct. 654; DeMassa, 747 F.2d at 1288. While I agree that this general principle ordinarily holds true for claims of Fourth Amendment violations, I do not agree that it is applicable to bona fide First Amendment claims, including claims involving past and future seizures of membership lists and similar constitutionally protected materials.
 
 
 38
 DiBella and DeMassa do not set forth an absolute rule prohibiting all interlocutory appeals in cases involving criminal proceedings. In DiBella, the Court stated that Congress intended such appeals should be permitted where the harm of "error unreviewed before the judgment is definitive and complete [is] greater than the disruption caused by immediate appeal." Id. (internal citation omitted). The Court also stated that "immediate appeal has been allowed from an order recognized as collateral to the principal litigation ... when the practical effect of the order will be irreparable by any subsequent appeal." Id. at 126, 82 S.Ct. 654 (internal citation omitted). These exceptions fit within a general public policy permitting interlocutory appeals in criminal cases where rights of exceptional importance are at stake, and where resolution of those rights cannot wait until the close of criminal proceedings. See, e.g., Helstoski v. Meanor, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (permitting immediate appeal of criminal defendant's motion to dismiss under the Speech or Debate Clause); Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (permitting immediate appeal of criminal defendant's motion to dismiss on double jeopardy grounds); Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (permitting immediate appeal of criminal defendant's motion to reduce bail); see also 18 U.S.C. § 3731 (permitting prosecution to appeal immediately order dismissing indictment, granting motion to suppress, or granting motion for return of property). In my view, the First Amendment right to association is one of those questions of exceptional importance that must be resolved as soon as possible, without waiting for the end of what may be interminable criminal proceedings. See Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 55, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989) ("Adjudicating the proper scope of First Amendment protections has often been recognized by this Court as a `federal policy' that merits application of an exception to the general finality rule."); United States v. P.H.E., Inc., 965 F.2d 848, 857 (10th Cir.1992) ("[F]ederal courts have asserted jurisdiction in a number of contexts involving non-final orders, in which the proceedings complained of infringed upon First Amendment rights").
 
 
 39
 In this case, the "criminal proceeding" is the beginning of a grand jury investigation.[1] At that stage of the proceedings, there is no certainty that a criminal indictment will ever issue, and even if probability weighs in favor of an indictment issuing eventually, there is no telling how long that might take. The target of a grand jury investigation may have to wait a fair number of years before he will have the chance to raise his First Amendment claims and, under the majority's holding, he will be unable during that entire time to take any legal action to prevent the continuing violation of his rights. In my view, an immediate appeal is necessary to afford the appellants a forum in which to assert their First Amendment rights before irreparable injury results.
 
 
 40
 The Supreme Court has held that when the government seizes material that is protected by the First Amendment, courts must provide increased oversight to ensure that First Amendment rights are not harmed. See New York v. P.J. Video, 475 U.S. 868, 873, 106 S.Ct. 1610, 89 L.Ed.2d 871 (1986). For example, a seizure of obscene materials cannot stand absent a warrant and a prompt post-seizure judicial determination of its legality. Id., citing Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968). In keeping with this idea, circuit courts have held that federal courts may exercise their equitable jurisdiction in favor of a potential defendant, who has not yet been indicted and who alleges First Amendment violations, because "[t]he promise of review of a prior restraint at some indefinite, future time does not meet constitutional requirements." Kitty's East v. United States, 905 F.2d 1367, 1372 (10th Cir.1990).
 
 
 41
 In the related Younger abstention context, the Supreme Court has held that the exercise of federal jurisdiction may be appropriate if a violation of First Amendment rights is alleged, even though under normal circumstances it would not be. See Dombrowski v. Pfister, 380 U.S. 479, 489-90, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (stating that abstention is inappropriate in cases where the threat of criminal prosecution itself chills freedom of expression). This is because sometimes First Amendment rights cannot adequately be addressed in the state criminal proceeding. Id. at 490-91, 85 S.Ct. 1116; see also Kaylor v. Fields, 661 F.2d 1177, 1182 (8th Cir.1981) (finding Younger abstention inappropriate as there was "no assurance that [plaintiff] could assert this free-speech claim as a defense to the crime ... with which she is charged"); Gold v. State of Connecticut, 531 F.2d 91 (2d Cir.1976) (per curiam) (stating in Younger abstention context that "federal review may be available where such orders affect First Amendment rights not capable of vindication through direct appeal from conviction"), citing Gerstein v. Pugh, 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).[2] Here, the exercise of appellate jurisdiction is justified for similar reasons.
 
 
 42
 United States v. American Friends Service Committee, 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974), the only First Amendment case on which the majority relies, does not alter the analysis in our case. Nowhere does American Friends discuss the First Amendment. Nor does it address an appellate court's jurisdiction to hear an interlocutory appeal. American Friends simply stands for the proposition that constitutional claims do not constitute exceptions to the Anti-Injunction Act. Id. at 15, 95 S.Ct. 13. The question before us, of course, is not whether the Anti-Injunction Act bars appellants' First Amendment claims (and I think it likely does not), but whether we have jurisdiction to decide on this appeal whether it does, or whether Appellants' claims should be rejected on other grounds. On that jurisdictional question, I believe that First Amendment principles are controlling.
 
 
 43
 Appellants have alleged that their First Amendment associational rights, and those of IGP's members, have been and are currently being chilled by the government's continuing possession of IGP's membership lists. In my view, the importance of this claim — and the need to resolve it expeditiously — outweighs any theoretical disruption to the grand jury proceedings that may be occasioned by an immediate appeal. I would hold that this is the kind of claim contemplated by DiBella's exceptions, and therefore that we have jurisdiction to review it. I respectfully dissent from the majority's decision to dismiss the appeal.
 
 
 
 Notes:
 
 
 [1]
 As the majority states, under Ninth Circuit law, a criminal proceeding isin esse once a grand jury investigation has begun. DeMassa, 747 F.2d at 1287. The Sixth, Seventh, Eighth, and Tenth Circuits take a different position, although the Second, Third, and Fourth Circuits share our view. The circuits that disagree with us require charges to be filed before a criminal proceeding is deemed "pending." See Blinder, Robinson & Co. v. United States, 897 F.2d 1549, 1554 (10th Cir.1990); In re Grand Jury Proceedings, 716 F.2d 493, 496 (8th Cir.1983); Sovereign News Co. v. United States, 690 F.2d 569, 571 (6th Cir.1982); Mr. Lucky Messenger Serv., Inc. v. United States, 587 F.2d 15, 16 (7th Cir.1978). But see United States v. Regional Consulting Serv., 766 F.2d 870 (4th Cir.1985); United States v. Furina, 707 F.2d 82 (3d Cir.1983); Standard Drywall, Inc. v. United States, 668 F.2d 156 (2d Cir.1982).
 
 
 [2]
 InWorld Famous Drinking Emporium v. City of Tempe, 820 F.2d 1079, 1082 (9th Cir.1987), this circuit held that the petitioner's First Amendment challenge under § 1983 was barred by Younger. However, in that case the plaintiffs were also defendants in state court criminal and civil enforcement proceedings, so they had ample opportunity to raise their First Amendment challenge in the ongoing state court proceedings. Here, by contrast, no indictment has issued against Appellants.