**In re GRAND JURY SUBPOENA DATED JUNE 5, 1985:**

**John DOE, Petitioner/Appellant,**

v.

**UNITED STATES of America, Respondent/Appellee.**

**Nos. 85–2456, 85–2457, 85–2845, 85–2875.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 10, 1986.

Decided Aug. 18, 1987.

Peter F. Vaira, Philadelphia, Pa., David P. Bancroft, San Francisco, Cal., for petitioner-appellant.

Geoffrey A. Anderson, San Francisco, Cal., for respondent-appellee.

Before KENNEDY, HUG,* and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Appellants James Roe and John Doe[1] appeal from two district court orders. The first order denied in part their motion to quash a subpoena duces tecum directed at Doe and ordered the clerk of the district court to release to the grand jury certain documents held under seal. The second order denied their motion to direct the government to disclose the contents of a grand jury transcript and a government affidavit presented to the district court. The district court viewed both of these documents in camera before deciding the first order. This court consolidated the appellants' four appeals from these two orders.

The appellants allege that the proceedings leading to the release of the documents violated their rights to procedural due process. They ask us to order the government to return all copies of the documents. The district court had jurisdiction pursuant to 28 U.S.C. § 1331. Whether we have jurisdiction under 28 U.S.C. § 1291 is in dispute. We hold that we do not have jurisdiction. We dismiss Roe's appeals because they are not justiciable; we dismiss Doe's appeals because they are from non-appealable orders.

## I.

On June 5, 1985, a grand jury impaneled in the Northern District of California is-

---

* Senior District Judge Gus J. Solomon, a member of the original panel, sitting by designation, died while this case was under submission. Circuit Judge Procter Hug, Jr., was appointed in his place, pursuant to General Order 3.2(g).

1. This court granted appellants' motion to keep their real names confidential.

sued a subpoena duces tecum upon appellant John Doe, counsel for both appellant James Roe and a business associate of Roe, commanding him to produce certain records of transactions between Roe and the business associate and certain notes, correspondence, and memoranda concerning conversations between Doe and the business associate. On July 9, 1985, Doe moved to quash the subpoena, asserting the attorney-client and work-product privileges. The government opposed the motion, contending that the crime-fraud exception nullified both privileges.

On July 22, 1985, the district court judge held a hearing on the Motion to Quash. All parties were represented by counsel at this hearing, including Doe. The district court judge granted Roe leave to intervene and Roe joined in Doe's Motion to Quash. In support of the subpoena, the government filed a sealed affidavit of Department of Justice attorney Geoffrey Anderson which the district court reviewed in camera. Anderson's affidavit stated that the government possessed grand jury materials which established a prima facie case of ongoing fraud and criminal activity against Roe and Doe. In addition, the government filed a sealed grand jury transcript of one witness' testimony in support of the subpoena duces tecum. Appellants Doe and Roe did not object to the government's submissions to the court for in camera review, nor did they ask to examine the government's affidavit or the sealed grand jury transcript.

At the hearing, the district court judge asked Doe to provide him with the allegedly privileged documents for in camera review. The judge stated that he would not review those documents unless he determined, on the basis of the documents provided by the government, that the government had established a prima facie case of crime or fraud. Doe willingly complied with the court's request. In fact, in a memorandum dated July 29, 1985, Doe himself "suggest[ed] that the court examine [some of] the material in camera to determine if the crime-fraud exception applie[d]." Doe did *not* ask the district court judge to return the documents should he rule for the government.

On August 16, 1985, the district court entered an order denying in part Roe and Doe's motion to quash. The order concluded that "the government had made a prima facie showing of a violation sufficiently serious to preempt both the attorney client and work product privileges" and that "several of the documents, or portions thereof, should be released to the grand jury for their consideration."[2] The order stated that the first conclusion was based solely on the court's in camera inspection of the submissions made by the government and that the second conclusion was based on its subsequent in camera review of the documents submitted by Doe. The order also stated that the court had "arranged for release of [the non-privileged] documents directly to a special agent in the U.S. Attorney's Office" for presentation to the grand jury. Appellants filed timely appeals from this order.

On August 28, 1985, appellants Doe and Roe filed in the district court an emergency motion to stay implementation of the district court's order pending appeal to this court. Before the documents were delivered to the grand jury, the district court ordered the special agent to delay delivery to the grand jury until the district court resolved the appellants' motion to stay. The government agreed not to give the documents to the grand jury or disseminate them in the interim.

On October 23, 1985, the district court denied the stay motion. For purposes of completing the record for appeal, the district court ordered the government to return the originals of the documents to the clerk of the district court, but permitted the government to make copies. The appellants then filed a motion for full disclosure of the contents of government attorney Anderson's affidavit and the sealed grand jury transcript. The district court denied the appellants' motion, and Roe and Doe timely appealed from this order.

---

2. The district court ordered the other documents returned to the appellants.

On October 29, 1985, appellants filed in this court an emergency motion to stay implementation of the district court's August 16, 1985 order. A motions panel of this court denied the appellants' emergency motion. At that point, the government apparently delivered the documents to the grand jury.

After briefing but before oral argument of this appeal, the grand jury returned an indictment against Roe based on its review of the documents. The grand jury did not take any action against Doe, but it did retain the documents. After the grand jury's indictment of Roe, the government moved to dismiss this case as moot. The appellants oppose this motion and ask us to order the government to return all copies of the documents. Appellants have never asked the district court judge to order the government to return the documents.

## II.

■ The government contends that Roe's appeal is not justiciable because it is now moot. An appeal is moot when we are unable to grant any effective relief. *In re Cook,* 730 F.2d 1324, 1326 (9th Cir.1984). The government's argument is based on the fact that the relief which Roe originally requested—return of the documents *prior* to their release to the grand jury—is now impossible. Since the grand jury has received the documents and indicted Roe, the government contends that we are unable to grant Roe *any* effective relief. Roe maintains that his appeal is not moot because the government remains in possession of the documents at issue and we can order the government to return them to him. Roe relies on our holdings in *In re Grand Jury Investigation (Sells),* 642 F.2d 1184, 1187–88 (9th Cir.1981), *aff'd sub nom. United States v. Sells,* 463 U.S. 418, 422 n. 6, 103 S.Ct. 3133, 3137 n. 6, 77 L.Ed.2d 743 (1983), and in *Hoffritz v. United States,* 240 F.2d 109, 111 (9th Cir.1956).

## A.

■ Roe contends that in *Sells* we rejected a mootness argument indistinguishable from the government's argument in this case. In *Sells,* a district court disclosure order gave the Civil Division of the Department of Justice access to documents acquired by a federal grand jury in an earlier criminal proceeding. The government planned to and did use the documents against Sells in a civil proceeding. Sells appealed, alleging grand jury abuse. *Sells,* 642 F.2d at 1186. We held that the appeal was not moot, even though many of the materials had already been disclosed to Civil Division attorneys and their assistants, because each day that the order remained in effect the "veil of secrecy" was "lifted higher by disclosure to additional personnel and by the continued access of those to whom the documents have already become familiar." *Id.* at 1188. "By its terms the disclosure order grant[ed] access to all attorneys for the Civil Division, their paralegal and secretarial staff, and all other necessary assistants." *Id.* at 1187–88. Under these circumstances, we recognized that Sells' appeal was "a proper means to prevent *future* disclosure before it occurs." *Id.* at 1188 (emphasis added).

In the present case, the government is not using the documents in any civil proceeding; in fact, the district court did not grant access to anyone other than the grand jury. Roe has provided no evidence of further or otherwise improper disclosure. Future disclosure is unlikely, at least until Roe's trial, at which time Roe can move to suppress any improper disclosure by the government. *See* Part II. B. *infra.*

Roe's request for a remedy designed to prevent the grand jury from obtaining access to the documents is therefore moot since there is no effective relief which we can now order. Roe has been indicted; we cannot "unring that bell." *See Maness v. Meyers,* 419 U.S. 449, 460, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975); *cf In re Grand Jury Proceedings (Katz),* 623 F.2d 122, 124 (2d Cir.1980) (order appealable) ("Here the cat apparently is still in the bag since the disputed documents are being held under seal *in the district court."*) (emphasis added) (citing *Maness v. Meyers,* 419 U.S. at 463, 95 S.Ct. at 593). In Roe's case, the

cat has been out of the bag ever since the government gave the materials to the grand jury.

### B.

▪ Roe recognizes our inability to fashion relief to prevent the harm caused him by the grand jury's *prior* use of the documents. He therefore asks us, in papers submitted after the indictment was issued, to rule that the documents were unlawfully acquired, to order their return, and to preclude their use in the future. But the availability of the remedies which Roe requests is not now ripe for review. *See United States v. Ryan,* 402 U.S. 530, 532 & nn. 3–4, 91 S.Ct. 1580, 1582 & nn. 3–4, 29 L.Ed.2d 85 (1971). Although his request for relief is not mooted by the grand jury's indictment, *Hoffritz v. United States,* 240 F.2d 109, 111 (9th Cir.1956), Roe should address his arguments in the first instance to the district court (or to a trial court if and when Roe is prosecuted). "Should his contentions be rejected ... by the [lower] court, they will then be ripe for appellate review." *Ryan,* 402 U.S. at 532, 91 S.Ct. at 1582. *Cf. United States v. Benjamin,* 812 F.2d 548, 550–54 (9th Cir.1987) (*trial court's* order denying motion for dismissal of indictment based on grand jury "irregularity" held appealable before final judgment because it met the strict requirements of the "collateral order" doctrine, as set forth in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)); *Hoffritz,* 240 F.2d at 110, 111 (subsequent indictment did not render order denying motion for return of documents before the grand jury nonappealable where appellant had asked the *district court,* for "an order requiring that the evidence be returned to him") (citing *Lapides v. United States,* 215 F.2d 253 (2d Cir.1954)).

If the district court erred in handing the materials over to the grand jury, Roe now has one of two appropriate avenues for relief. First, if there is no criminal prosecution pending against him, Roe can move for return of the documents in the district court. *See Ryan,* 402 U.S. at 533, 91 S.Ct.

at 1582; *United States v. Martinson,* 809 F.2d 1364, 1366–67 (9th Cir.1987); *see generally DiBella v. United States,* 369 U.S. 121, 131–32, 82 S.Ct. 654, 660, 7 L.Ed.2d 614 (1962); *DeMassa v. Nunez,* 747 F.2d 1283, 1286–87 (9th Cir.1984) (detailing factors to be considered in determining whether there is a criminal prosecution pending). Second, if there is a criminal prosecution pending, he can move for an order suppressing the subpoenaed materials, *United States v. Blue,* 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966), or for an order dismissing the indictment, *United States v. Benjamin,* 812 F.2d 548, 550–54 (9th Cir.1987) (discussing appealability of trial court's order denying motion for dismissal of indictment based on grand jury abuse). "[T]he availability of a motion to suppress in future ... proceedings provides a remedy for improper disclosures *that have already occurred.*" *Sells,* 642 F.2d at 1188 (emphasis added). *see also id.* (citing cases). Where there is clear potential for violation of rights and the violation cannot be corrected at a later stage, our intrusion may be warranted, *In re Grand Jury Investigation of Hugle,* 754 F.2d 863, 864 (9th Cir.1985), but that is not the case here.

We hold that Roe's appeal is not presently justiciable.

### III.

#### A.

▪ The government also argues that this appeal is moot as to Doe. But Doe stands in a position different from Roe's. The grand jury has not indicted Doe; the continued possession and control of the documents by the grand jury places Doe at risk of being indicted. *Cf. Sells,* 642 F.2d at 1187–88. As Doe contends, we can diminish this risk by ordering the return of all of the documents. *Sells,* 463 U.S. at 422 n. 6, 103 S.Ct. at 3137 n. 6; 642 F.2d at 1188. Under our reasoning in *Sells,* Doe's appeal is not moot.

#### B.

We have no jurisdiction over Doe's appeal, however. The orders from which he

appeals are not final orders and are not within any exception to 28 U.S.C. § 1291's requirement of finality. *See In re Grand Jury Subpoena Served Upon Niren,* 784 F.2d 939, 941–42 (9th Cir.1986) (per curiam) (dismissing appeal of third-party, in-house counsel to denial of motion to quash where the attorney had not been held in contempt). Moreover, as a matter of policy, we think the grand jury's possession of the documents makes any action by this court, at this time, inappropriate. If Doe properly asserted any privilege, he, like Roe, could obtain effective relief in further proceedings. *See* Part II. B. *supra.* If he failed to obtain relief he could then appeal to this court for review. *See Ryan,* 402 U.S. at 533, 91 S.Ct. at 1582 (where there is no criminal prosecution pending against the movant, review is immediately available from a district court's denial of a motion for return of seized property because the government might otherwise indefinitely retain the property and thereby preclude effective appellate review).

■ Doe asserts that the denial of his motion to quash is appealable as a final order because it terminated the proceedings before the district court. A denial of a motion to quash a grand jury subpoena duces tecum, however, is ordinarily not an appealable order. *Ryan,* 402 U.S. at 532–34, 91 S.Ct. at 1581–83; *In re National Mortgage Equity Corp. Mortgage Pool Certificates Litigation,* 821 F.2d 1422, 1423–25 (9th Cir.1987); *In re Subpoena Served on the Cal. Pub. Util. Comm'n (Southern Cal. Edison),* 813 F.2d 1473, 1476 (9th Cir.1987); *Niren,* 784 F.2d at 941–42; *In re Grand Jury Witness (Salas and Waxman),* 695 F.2d 359, 361 n. 3 (9th Cir.1982) (per curiam); *In re Lowthian,* 575 F.2d 1292, 1293 (9th Cir.1978) (per curiam). *See generally* 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 45.05[3] (2d ed. 1986). The person to whom a subpoena is directed can comply with the order and object at the subsequent trial to the introduction of the subpoenaed material against him. *Ryan,* 402 U.S. at 532 & n. 3, 91 S.Ct. at 1582 & n. 3. If he thinks the subpoena is unlawful, he can refuse to comply with its instruc-

tions and litigate the propriety of the subpoena in a contempt proceeding. *Id.; Southern Cal. Edison,* 813 F.2d at 1476; *Salas,* 695 F.2d at 361 n. 3.

> Until a contempt citation is issued as a final judgment in the contempt proceeding, we lack jurisdiction to review the order.
>
> The requirement that a nonparty must be in contempt of court in this situation is a serious matter and serves to illustrate the strictness in applying the final judgment rule.

*Southern Cal. Edison,* 813 F.2d at 1476 & n. 1 (citations omitted).

The appealability of the denial of a motion to quash is particularly inappropriate in the grand jury setting. We have traditionally accorded the grand jury wide latitude to inquire into violations of criminal law. *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). Its responsibilities include both the protection of citizens against unfounded criminal prosecutions and the determination of whether there is probable cause to believe that a crime has been committed. *Id.* The grand jury may compel the production of evidence as it considers appropriate; its scope is not to be narrowly circumscribed. *Id.* The law vests the grand jury with substantial powers because its "investigative power must be broad if its public responsibility is adequately to be discharged." *United States v. Mandujano,* 425 U.S. 564, 571, 96 S.Ct. 1768, 1773, 48 L.Ed.2d 212 (1976). *See also* 2 S. Beale & W. Bryson, *Grand Jury Law and Practice* § 7:01, at 7–4 (1986) ("The grand jury has the most extensive subpoena power known to the law.").

■ However, we do recognize an exception to the general rule barring appeal of a denial of a motion to quash. If the subpoena is directed to a third-party attorney who cannot be expected to risk a contempt citation and may therefore surrender the subpoenaed materials without asserting the rights of the client, the *target of the subpoena* (i.e., the client) can immediately ap-

peal a denial of the motion to quash. *In re Grand Jury Proceeding (Schofield)*, 721 F.2d 1221, 1222 (9th Cir.1983); *In re Grand Jury Subpoena Duces Tecum (Lahodny)*, 695 F.2d 363, 365 (9th Cir.1982); *see also Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918) (in order to protect interests of a *powerless* third party, rule of finality not applicable where the subpoenaed party cannot be expected to risk a contempt citation); *National Mortgage Equity Corp.*, 821 F.2d at 1424 (discussing narrowness of *Perlman* exception to rule of finality); *Niren*, 784 F.2d at 941–42 (same).

■ This exception for clients of third-party attorneys is not applicable here. In this case, the attorney is an active participant in the litigation, appealing from the district court's denial of his motion to quash on his own behalf. Moreover, he is currently representing his client, Roe. At least in *Schofield*, the subject of the subpoena was the client's *former* attorney at the time of the issuance of the subpoena. As a former attorney, the subject could not reasonably be expected to risk a contempt citation (or even to object to the subpoena) in order to protect someone who no longer employed him. Doe, on the contrary, was obligated to act in the best interests of his current client, Roe, and to assert any available privileges. In fact, he did just that. As we noted in *Niren*, "the exception [allowing the client to appeal] becomes more difficult to sustain where the target of the disclosure order [i.e., the third-party attorney] is both subject to the control of the person or entity asserting the privilege and is a participant in the relationship out of which the privilege emerges." 784 F.2d at 941–42 (citing *National Super Spuds, Inc. v. New York Mercantile Exchange*, 591 F.2d 174, 179–80 n. 7 (2d Cir.1979) (Friendly, J.)). Although *Schofield* involved a former attorney at the time of both the issuance of the subpoena and the appeal, we acknowledge that it relied on cases which involved attorneys who arguably were still representing the clients at the time of the issuance of the subpoenas *and* at the time of the denial of the motion to quash. *See, e.g., Lahodny*, 695 F.2d at 364–65; *In re Grand Jury Proceedings (Fine)*, 641 F.2d 199, 201–03 (5th Cir.1981). While this difference might alter our analysis in another context, we do not think it determinative in this case. We find the reasoning of our *Niren* panel more apropos.

Doe contends that, by turning over the documents to an agent for the grand jury, the *district court* preempted his ability to be held in contempt before the grand jury. While this is partly the case, it is only half of the story. Doe himself willingly and *unconditionally* gave the documents to the district court for its determination as to their privileged status. Moreover, Doe has cited no case which stands for the novel proposition that an attorney has a "right" to be held in contempt. We will not create such a precedent here. There is no constitutional right to disobey a lawful subpoena. *See United States v. United Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1946); *cf. United States v. Armstrong*, 781 F.2d 700, 703–06 (9th Cir. 1986); 18 U.S.C. § 401(3).

We hold that the orders from which Doe appeals are not final orders under 28 U.S.C. § 1291 and that these orders are not within any exception to that section's rule of finality.

## IV.

The appropriate method for the appellants to seek relief once the grand jury received the materials was by means of a motion for return of the documents directed to the district court. Should the government attempt to use the materials in a prosecution of either of the appellants, then Roe or Doe can make a motion to suppress their use at trial. We dismiss Roe's appeals as nonjusticiable. We dismiss Doe's appeals as nonappealable.

APPEALS DISMISSED.