**In re GRAND JURY SUBPOENAS DATED DECEMBER 10, 1987.**

**DOES I THROUGH IV, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 88–15193, 88–15268 to 88–15270.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 1990.

Decided Feb. 15, 1991.

John M. Bray and Joseph M. Jones, Schwalb, Donnenfeld, Bray & Silbert, Washington, D.C., for appellant, Doe II.

Ronald J. Yengich and G. Fred Metos, Yengich, Rich, Xaiz & Metos, Salt Lake City, Utah, for appellant, Doe III.

James A. Boevers and Samuel Alba, Prince, Yeates & Geldzahler, Salt Lake City, Utah, for appellant, Doe IV.

Sanford Svetcov, Chief, Appellate Div., Matthew B. Pavone, Asst. U.S. Atty., Organized Crime Drug Enforcement Task Force, San Francisco, Cal., for appellee.

Before CHAMBERS, ALARCON and BRUNETTI, Circuit Judges.

ALARCON, Circuit Judge:

Doe Two, Doe Three, and Doe Four appeal from the district court's partial denial of their motions to quash grand jury subpoenas and for the return of property seized, pursuant to Fed.R.Crim.P. 41(e). We affirm.

## FACTUAL AND PROCEDURAL HISTORY

On December 11, 1987, as part of a grand jury investigation into money laundering and drug trafficking, federal agents sought warrants to search two offices of the Doe Four law firm, a firm in the western part of the United States.[1] The affidavit in support of the search warrants asserted the following facts.

In the summer of 1983, William Isted told Doe One that there were ways to launder money through foreign corporations. Thereafter, Doe One and Isted set up at least one corporation in the principality of Liechtenstein to launder drug money. Isted smuggled $100,000 out of the United States, which was put into the Liechtenstein corporation's accounts. In April, 1985, Isted was arrested at the airport in Vancouver, Canada. He had in his possession $200,000 in cash and documents pertaining to the Liechtenstein corporation. These documents showed that Doe One was involved in the corporation. Isted's luggage contained a letter directed to the attention of Doe Two at the Doe Four law firm involving several other corporations, and an envelope with the name "Doe Two" handwritten on the outside which contained documents regarding these corporations.

The Government searched Doe One's business office, home, bank safety deposit box, storage locker, ranch, and estranged wife's home. These searches revealed drug residue in several places, a drug laboratory at the ranch, and documents indicating that Doe One was involved in drug smuggling.

In January, 1986, Doe One pleaded guilty to currency law violations. In May, 1986, he was indicted for distribution of, and conspiracy to distribute, cocaine.

The Government persuaded Doe One's wife to cooperate in the investigation. She contacted Doe Two several times, seeking information about certain of Doe One's companies. Government agents monitored these calls. Doe One's wife also told the Government that Doe One had met with Doe Two several times to discuss Doe One's money laundering plans and that Doe Two assisted Doe One in setting up dummy corporations to be used in the money laundering.

Phone calls to the Doe Four law firm revealed that Doe Two split his time between two offices of the firm located in separate cities. Doe Two spent up to 40% of his time each week at the firm's satellite office.

Based on this affidavit the court issued warrants to search Doe Two's files in both of Doe Four's offices. The federal agents served the warrants that afternoon. The officers also served forthwith grand jury subpoenas on Doe Four. The warrants and subpoenas sought the same objects: documents containing references to Doe One or any of twenty-one other individuals or business entities which the Government suspected of being involved in the money laundering scheme. The subpoenas required production of the documents from any area in Doe Four's offices outside of Doe Two's files.

At the main office, the federal agents were met by firm attorneys who objected to the execution of the search warrant. As a result of negotiations with the United States Attorney, the firm designated the areas which fell within the warrant. Law firm personnel were allowed to identify the relevant documents and place them in a sealed package, without examination by the agents.

At the satellite location, the federal agents searched Doe Two's office and related work areas. They seized files marked with the names listed in the warrant, but did not read the documents. These documents were subsequently filed, under seal, with the district court.

As to the subpoenas, the firm agreed to segregate all documents described by the warrants and subpoenas which were outside of Doe Two's files and to provide

---

1. The parties were designated as Does in this proceeding to protect their privacy. The appellants originally consisted of Doe Four, a law firm, Doe Two a lawyer at the firm, Doe One, a client of Doe Two, and Doe Three, the brother of Doe Two who was also Doe Two's client.

copies of them, under seal, to the district court. The time for compliance was eventually extended to January 7, 1988.

Does One to Four moved the district court to quash the subpoenas. They simultaneously moved for return of the seized documents pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure. These motions were heard April 15, 1988.

The district court found that there was no probable cause to support the issuance of the warrants or to authorize the search of the private papers of Doe Three and eight other individuals or entities named in the warrants and subpoenas. The court found that the subpoenas were overbroad to the same extent, except in regard to Doe Three and his companies, or any documents which also referred to Doe Two. All documents pertaining to those entities for which the court found there was no probable cause to search and no relevancy to the grand jury investigation were returned to Doe Four. The Government has not appealed from that portion of the district court's order.

With respect to the remaining documents, the district court found that there was probable cause to support the warrants and that the subpoenas were not overbroad. The court limited the subpoenas with respect to the documents that could be obtained in reference to Doe Three to certain time periods. The court also found, after an *in camera* review of the remaining documents, that they were not covered by the attorney-client privilege or the work product doctrine or were admissible under the crime/fraud exception.

Does One to Four appealed from the district court's partial denial of their motions. Doe One has withdrawn his appeal.

## DISCUSSION

Appellants advance five arguments in support of their contention that the district court erred in partially denying their motions to quash the grand jury subpoenas and for the return of property seized. They argue that:

One. The original warrants were not supported by probable cause, they were overbroad, and they lacked particularity;

Two. The subpoenas are overbroad, lacking in particularity, irrelevant, and an invalid contrivance to protect an illegal search;

Three. The documents sought are protected by the attorney-client privilege or the work-product doctrine;

Four. The Government failed to make a prima facie showing, independent of the documents themselves, that otherwise protected documents fell within the crime/fraud exception to the attorney-client privilege and work product doctrines;

Five. The affidavit upon which the district court based its findings of probable cause and that the crime/fraud exception applied should be stricken because it was tainted by surreptitious invasions of the marital and attorney-client privileges.

We conclude that none of these contentions is meritorious and affirm.

A. *The Motion to Quash the Subpoena*

The district court ruled that the search warrants were overbroad as applied to Doe Three. The Government has not appealed from that ruling. The court ruled, however, that the subpoenas were valid as applied to Doe Three. Doe Three is, thus, the only party before us whose documents were surrendered to the court pursuant to the subpoenas.

█ Doe Two joined Doe Four's motion to quash the subpoenas. The subpoenas do not seek documents pertaining to Doe Two. Neither are the subpoenas directed to him. Thus, he lacks standing to challenge the subpoenas. *United States v. Miller,* 425 U.S. 435, 444, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71 (1976) (third party lacks standing to challenge subpoena even if a criminal prosecution is planned against the third party).

1. Jurisdiction

█ Ordinarily, the denial of a motion to quash a subpoena duces tecum is an interlocutory decree. *Cobbledick v. Unit-*

*ed States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). This court has no jurisdiction over an appeal from such an order. *Id.* To obtain appellate review, the person resisting the subpoena must first refuse to comply and be held in contempt. *United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971). He can then challenge the validity of the subpoena by seeking appellate review of the contempt order. *Id.* The Government argues that we have no jurisdiction over this appeal because Doe Four complied with the subpoena and the denial of the motion to quash was, thus, an interlocutory decree.

■ There is a well recognized exception to the rule precluding an appeal from a denial of a motion to quash a subpoena duces tecum when the subpoena is directed to a third party. *Perlman v. United States*, 247 U.S. 7, 13, 38 S.Ct. 417, 420, 62 L.Ed. 950 (1918). A third party cannot be expected to risk contempt in order to protect the interests of the person whose papers were seized. *In re Grand Jury Subpoena Served Upon Niren*, 784 F.2d 939, 941 (9th Cir.1986). In such circumstances, the target of the investigation may move to quash the subpoena. The denial of the motion is immediately appealable by the target of the investigation. *In re Grand Jury Subpoenas Duces Tecum (Lahodny)*, 695 F.2d 363, 365 (9th Cir.1982).

This exception is more difficult to apply when the third party is an attorney with an ongoing relationship with the person whose papers were seized. In several cases, we have refused to extend the doctrine to attorneys who were still actively representing the person whose papers were seized. In *In re Grand Jury Subpoena Served Upon Niren*, 784 F.2d 939 (9th Cir.1986), we refused to allow the immediate appeal of a motion to quash a subpoena directed to in-house counsel who was still employed by, and under the control of, the target client. In *In re Grand Jury Subpoena Dated June 5, 1985*, 825 F.2d 231 (9th Cir.1987), we declined consideration of an appeal from an order denying a motion to quash a subpoena served upon an attorney who was "an active participant in the litiga-

tion, appealing from the district court's denial of his motion to quash on his own behalf." *Id.* at 237.

The *June 5* decision, however, noted that other cases had held that the motion was immediately appealable when the attorney was, arguably, still representing the client. *Id.; see e.g., Lahodny*, 695 F.2d at 365 ("an immediate appeal is proper when the subpoena is directed to a third party, here the appellant's attorney, because that party will not be expected to risk a contempt citation").

■ We are persuaded that we have jurisdiction over Doe Three's appeal from the denial of the motion to quash the subpoenas. There is no indication in the record before us that either Doe Four or Doe Two presently represents the target of the subpoenas. Moreover, Doe Four chose to comply with the subpoenas. Compliance, instead of refusing to produce the material described in the subpoenas, is the type of situation which made necessary the adoption of the exception authorizing intervention and immediate appellate review.

The Government argues that there is no jurisdiction in this court because each of the parties is asserting its own rights. While the Government's argument is well taken regarding Doe Four, it misses the point in regard to Doe Three.

■ Doe Four asserts that the subpoenas should be quashed because they violate its fourth amendment rights. Since it is the entity on whom the subpoenas were served, however, the rule established in *United States v. Ryan, supra*, requires it to decline to comply and be found in contempt before there is a final order over which an appellate court has jurisdiction. *United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971) (except in cases of a subpoena to a third party, denial of a motion to quash is not a final judgment so no appeal is available).

Doe Four has chosen a different course. It complied with the subpoenas. Under these circumstances, the district court's denial of Doe Four's motion to quash the subpoenas is an interlocutory order. We

have no jurisdiction over Doe Four's appeal from the denial of the motion to quash the subpoenas.

Doe Three is in a different position. His situation is similar to the one this court confronted in *Lahodny, supra.* Doe Three must rely on Doe Four to protect his interests. Doe Four, however, elected to comply with the subpoenas. The only way to assure Doe Three that his interests will be protected is to allow him to take an immediate appeal from the order denying his motion to quash the subpoenas. *Lahodny,* 695 F.2d at 365. *Cf. Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918) (immediate appeal available when court order compelling testimony will injure third party).

### 2. The Validity of the Subpoenas

"We review the district court's factual determinations under the clearly erroneous rule, and review its decision to quash the grand jury subpoenas for abuse of discretion." *In re Grand Jury Subpoenas,* 803 F.2d 493, 496 (9th Cir.1986).

■ The grand jury has broad powers of investigation. *See United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974) ("grand jury has been accorded wide latitude to inquire into violations of criminal law"). As the Supreme Court has explained:

> It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.

*Blair v. United States,* 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919). Rule 17 of the Federal Rules of Criminal Procedure provides that a grand jury may issue a subpoena. The rule imposes no limitations on the purposes for which it is issued, but provides only that the subpoena may be quashed "if compliance would be unreasonable or oppressive." Fed.R.Crim.P. 17(c). This court has rejected arguments that an affidavit of need or relevance should be required before a grand jury subpoena is issued. *In re Grand Jury Proceeding,* 721 F.2d 1221, 1223 (9th Cir. 1983).

■ Doe Three merges his arguments against the validity of the warrants and the subpoenas. He contends that the subpoenas are the "functional equivalents" of the search warrants and should be treated as such. He points repeatedly to the fact that the subpoenas were served at the same time as the search warrants and that the federal agents attempted to "enforce" the subpoenas through immediate seizure of the documents.

■ Doe Three offers no legal authority to support this novel proposition. Subpoenas are not search warrants. They involve different levels of intrusion on a person's privacy. A search warrant allows the officer to enter the person's premises, and to examine for himself the person's belongings. The officer, pursuant to the warrant, determines what is seized. Moreover, if evidence or contraband of any sort is in plain sight, the officer may seize it, even if it is not listed in the warrant. *Arizona v. Hicks,* 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987). The person to be searched has no lawful way to prevent execution of the warrant.

■ Service of a forthwith subpoena does not authorize an entry into a private residence. Furthermore, the person served determines whether he will surrender the items identified in the subpoena or challenge the validity of the subpoena prior to compliance.

These differences are not eliminated by the fact that the search warrants and subpoenas were delivered at the same time. Moreover, in the instant matter the federal agents did not enforce the subpoenas on the date the search warrants were executed. In fact, the law firm was eventually given nearly a month to comply with the subpoenas.

■ Doe Three has not argued that compliance with the subpoenas is oppressive. Indeed, Doe Four has already com-

plied with them. Instead, Doe Three argues that the lack of relevance, breadth, and circumstances in which the subpoenas were issued were such that they should be quashed. But he has failed to show that the papers that are described in the subpoenas are outside the scope of a legitimate investigation by the grand jury. He has failed to show that compliance would be unreasonable or oppressive. The district court did not abuse its discretion in partially denying Doe Three's motions to quash the subpoenas.

B. *The Rule 41(e) Motion for the Return of Property*

 The district court ruled that the warrants were overbroad and invalid as they applied to Doe Three. Doe Three's files which were seized pursuant to the search warrants have been returned. The Government has not appealed from that ruling. Doe One has withdrawn his appeal. Thus, only Doe Two and Doe Four appeal from the partial denial of their Rule 41(e) motion.[2] A motion for the return of property under Rule 41(e) is treated as a civil equitable proceeding. *United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir. 1987). This court has jurisdiction over the denial of such a motion when there are no criminal charges pending against the movant. *DiBella v. United States*, 369 U.S. 121, 131–132, 82 S.Ct. 654, 660–61, 7 L.Ed.2d 614 (1962), *DeMassa v. Nunez*, 747 F.2d 1283, 1286 (9th Cir.1984), *reh'g granted in part, denied in part*, 770 F.2d 1505 (9th Cir.1985). None of the appellants are currently subject to criminal charges related to this appeal.

 We review a district court's interpretation of Rule 41(e) *de novo. Center Art Galleries–Hawaii, Inc. v. United States*, 875 F.2d 747, 751 (9th Cir.1989). A motion pursuant to Rule 41(e) to return property seized is predicated on the illegality of the seizure and a showing of the right to possession. Fed.R.Crim.P. 41(e). The legality

of the search is discussed below. The determination of the right to possession is a finding of fact which we review for clear error. *Ahern v. Central Pacific Freight Lines*, 846 F.2d 47, 48 (9th Cir.1988) (citing *Worthy v. McKesson*, 756 F.2d 1370, 1372 (8th Cir.1985).

1. The Relevance of the Search Warrants

The Government argues that the validity of the search warrants is irrelevant because the documents would have been obtained pursuant to the subpoenas. Because we hold that the warrants, as modified by the District Court, were valid, we do not reach this issue.

2. Issuance of the Warrants

 An affidavit in support of the warrant must "enable the magistrate to conclude that it would be reasonable to seek the evidence in the place indicated by the affidavit." *U.S. v. Hendershot*, 614 F.2d 648, 654 (9th Cir.1980) (citations omitted). Rule 41(b) of the Federal Rules of Criminal Procedure provides that a warrant may issue to seize

(1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means for committing a criminal offense.

 The Supreme Court has said that search warrants should be read "in a common sense fashion." *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir.1982) (citing *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)). A certain deference should be given searches where the law enforcement officers have sought and obtained judicial approval of their actions. This is to avoid a "grudging or negative attitude by reviewing courts toward warrants [which] will tend to discourage police officers from sub-

**2.** Though the parties did not brief the issue, we note for the record that Fed.R.Crim.P. 41(e) has been amended since this action was commenced. Since we affirm the district court, the amendment does not affect our decision. Accordingly, we do not reach the issue as to which version of the rule applies.

mitting their evidence to a judicial officer before acting." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). "[I]n a doubtful or marginal case a search under a warrant may be sustained where without one it would fail." *Id.* at 106, 85 S.Ct. at 744.

■■■ We review the district court's probable cause determination "to ensure that the magistrate had 'a substantial basis ... for conclud[ing]' that probable cause existed." *United States v. Rodriguez,* 869 F.2d 479, 484 (9th Cir.1989) (quoting *Illinois v. Gates,* 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960))). This standard of review is "less probing than de novo review and shows deference to the issuing magistrate's determination." *United States v. Angulo–Lopez,* 791 F.2d 1394, 1396 (9th Cir.1986).

Appellants assert that, because of the potential for disclosure of privileged communications, searches of attorneys' offices should be subjected to a heightened degree of scrutiny. They first note that we have recognized that clients have a reasonable expectation of privacy in their attorney's office. *DeMassa v. Nunez,* 770 F.2d 1505, 1506 (9th Cir.1985). They then argue that we should adopt the position taken by the Second Circuit in *National City Trading Corp. v. United States,* 635 F.2d 1020 (2d Cir.1980). There, the Second Circuit stated that "a law office search should be executed with special care to avoid unnecessary intrusion on attorney-client communications." *Id.* at 1026.

The Government agrees that special care should be taken when a search of an attorney's office is involved. The Government argues that the record demonstrates that special care was exercised in the search of Doe Four's offices.

■■■ The original warrants listed twenty-one individuals or entities, in addition to Doe One, that were the subjects of the search. The district court later struck nine of the names from the list because there was no probable cause that they were involved in the money laundering or drug trafficking schemes. Neither Doe Two nor Doe Four was listed in the warrants as a subject of the search. Thus, the issue is simply whether there was probable cause to believe that the evidence the Government sought would be found in Doe Two's offices at the Doe Four law firm.

The supporting affidavit in this case is sufficient to support the finding of probable cause. It states that a confederate of Doe One had confessed to the development of a money laundering scheme involving certain corporations. At the time he was arrested, he possessed $100,000 in cash, a plane ticket to Switzerland, documents relating to several corporations, and correspondence linking Doe One to those corporations. The correspondence was directed to Doe Two's attention at Doe Four's offices. A search of public records linked Doe One with various corporations and individuals. Doe Two was also associated with several of these corporations. Doe Two had told Doe One's wife that files regarding the Liechtenstein corporation were at the law firm. The affidavit also states that Doe One's wife asserted that Doe Two knew of, and assisted in, Doe One's money laundering scheme.

It is clear that the district court had a substantial basis in fact upon which to reach a reasonable conclusion that the evidence the Government sought would be found at Doe Two's offices in the Doe Four law firm.

### 3. The Warrants

■■■ In order for a search to be reasonable, the warrant must be specific. *See United States v. Brock,* 667 F.2d 1311, 1322 (9th Cir.1982), ("a warrant must be reasonably specific, rather than elaborately detailed, in its description of the objects of the search") *cert. denied* 460 U.S. 1022, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983). Specificity has two aspects: particularity and breadth.

Particularity is the requirement that the warrant must clearly state what is sought. *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir.1986). Breadth deals with the

requirement that the scope of the warrant be limited by the probable cause on which the warrant is based. *United States v. Cardwell,* 680 F.2d 75, 78 (9th Cir.1982) ("Generic classifications in a warrant are acceptable only when a more precise description is not possible." (quoting *United States v. Bright,* 630 F.2d 804, 812 (5th Cir.1980)).

### a. Particularity

The fourth amendment requires a search warrant to "particularly describe[ ] the place to be searched and the persons or things to be seized." Thus, the warrant must make clear to the executing officer exactly what it is that he or she is authorized to search for and seize. "The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir.1986). Whether the warrant describes items to be seized with sufficient particularity is reviewed *de novo. United States v. McLaughlin,* 851 F.2d 283, 285 (9th Cir.1988).

In this case, the warrants listed a variety of documents as objects of the search. But the list was qualified by the requirement that the document seized be "in the name of or have reference to" Doe One or one of the twenty-one persons or entities that had been linked to him through the investigation. A person conducting the search pursuant to the warrants was only required to look at the name on the file to determine whether it was subject to seizure. If not, it was not subject to seizure. There is no ambiguity or vagueness in this test. Thus, the warrants were sufficiently particular.

### b. Breadth

The scope of the warrant, and the search, is limited by the extent of the probable cause. *United States v. Whitney,* 633 F.2d 902, 907 (9th Cir.1980) ("The command to search can never include more than is covered by the showing of probable cause to search.") (quoting *United States v. Hinton,* 219 F.2d 324, 325 (7th Cir.1955)), *cert. denied,* 450 U.S. 1004, 101 S.Ct. 1717,

68 L.Ed.2d 208 (1981). We have pointed out that probable cause must exist to seize all the items of a particular type described in the warrant. *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir.1986). Like the particularity requirement, this requirement prevents a "general, exploratory rummaging in a person's belongings." *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971)). Thus, the concept of breadth may be defined as the requirement that there be probable cause to seize the particular thing named in the warrant.

Courts have repeatedly invalidated warrants authorizing a search which exceeded the scope of the probable cause shown in the affidavit. *See, e.g., Center Art Galleries–Hawaii, Inc. v. United States,* 875 F.2d 747 (9th Cir.1989) (invalidating warrant to seize all records of art gallery suspected of fraud in regard to one artist's work); *United States v. Washington,* 797 F.2d 1461, 1472 (9th Cir.1986), ("where a business is searched for records, specificity is required to ensure that only the records which evidence crime will be seized and other papers will remain private"); *United States v. Leary,* 846 F.2d 592, 601–02 (10th Cir.1988) (warrant limited only by reference to particular federal statute was overbroad).

Appellants argue that the warrants were overbroad in that they authorized the seizure of the files of clients who were not sufficiently linked to the money laundering scheme. The district court held that the warrants were overbroad on this ground as to nine of the persons or entities named in the warrants. Appellants appear to argue that the finding of overbreadth as to nine of the persons or entities named in the warrants taints the entirety of the warrants and invalidates the seizure of the papers of the persons or entities who were sufficiently connected to the money laundering scheme. We disagree.

The validity of the warrants as far as the nine persons or entities whose papers were returned is not before this court. To the degree that a search of their files was unreasonable, the district court has already remedied that invasion of their privacy by

holding the warrants invalid and returning their files pursuant to Rule 41(e).

The remaining documents and papers described in the warrants were related to the money laundering scheme. The fact that the district court found that the seizure of the property of nine persons or entities was invalid as not connected to the crime described in the affidavit does not affect the validity of the warrants insofar as probable cause exists to search for the papers of the other persons or entities identified in the affidavit and warrants.

■ We have previously held that the valid portions of a search warrant may be severed from the invalid portions and the search made pursuant to the valid portions upheld. *United States v. Gomez–Soto*, 723 F.2d 649, 654 (9th Cir.), *cert. denied* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). But severance is not available when the valid portion of the warrant is "a relatively insignificant part" of an otherwise invalid search. *United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir.1986).

■ We are persuaded that severance is appropriate here. The district court found that the warrants were overbroad as to only nine of the twenty-two persons or entities named. Moreover, documents of the persons or entities for which there was probable cause constituted the focus, and the vast majority, of the files searched. Thus, this situation is unlike *Spilotro*, and severance is proper.

### 4. Execution of the Warrants

■ The appellants do not complain of the method in which these warrants were executed. Indeed, it appears that the way in which the warrants were executed is a model of government sensitivity to the special privacy interests that are implicated when a law firm's files must be searched.

From the time the warrants were requested, the officers took considerable care in minimizing the intrusion into the privacy of the Doe Four law firm. The Government intentionally timed the search for a time of day when it would least disrupt the law firm's activities. The Government also suggested to the issuing court that it impose any special restrictions on the execution of the warrants it deemed appropriate in light of the fact that the files in a law office would be searched.

The execution of the warrants, likewise, shows considerable concern for the privacy interests of the law firm and its clients. At the main office, the agents delayed the search while law firm attorneys negotiated with the United States Attorney as to the best way to meet the Government's need for these documents. An agreement was reached that the officers would not conduct a search of the files. Instead, law firm personnel searched the files and identified the relevant documents. These documents were sealed and turned over to the district court.

At the satellite office, the officers seized the files bearing the names of the persons identified in the warrant, without reviewing the contents. These documents were sealed and delivered to the district court.

As the result of these precautions, the privacy interests of the persons subject to the search were fully protected. The probable cause determination and the scope of the search have been reviewed by both the district court and this court. The Government has not yet had the opportunity to see the papers removed from the law firm's files.

### C. Attorney–Client Privilege and Work–Product Doctrine

Appellants argue that, even if the warrants were valid and subpoenas enforceable, the documents they sought were privileged. The Government contends that the documents are not privileged or, to the degree they would be, fall into the crime/fraud exception to the attorney-client privilege. After an *in camera* inspection, the district court found that the documents were not privileged or were within the crime/fraud exception.

The district court's rulings on the scope of the attorney-client privilege involve mixed questions of law and fact and are reviewable *de novo*. Where the relevant scope of the attorney-client privilege is clear and the decision that the district court must make is essentially factual, however, the district court's rul-

ings as to the privilege are reviewed for clear error. *United States v. Zolin,* 809 F.2d 1411, 1417 (9th Cir.1987) *aff'd in part, rev'd in part* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (citation omitted).

▮ We have reviewed the documents examined by the district court *in camera.*[3] None of them appears to contain privileged communications between attorney and client for the purposes of obtaining or giving legal advice. None of them is within the work-product doctrine.

### D. The Crime/Fraud Exception

Appellants have argued that the district court's finding that any otherwise privileged documents fell within the crime/fraud exception is in error. Since none of the documents we have reviewed are privileged, we do not reach this issue.

### E. Governmental Invasion of the Attorney–Client Privilege

▮ Appellants argue that the Government, by convincing the wife of Doe One to assist in the investigation, has consciously attempted surreptitiously to invade the marital and attorney-client privileges. Appellants recognize that these privileges are Doe One's to assert and that that party is not before us. Nevertheless, appellants argue that these actions somehow taint the entire investigation and that both their motions should, therefore, be granted.

Other courts have held that an intentional and surreptitious invasion of the attorney-client privilege by the Government may so taint an investigation that an indictment must be dismissed. *See, e.g., United States v. Valencia,* 541 F.2d 618 (6th Cir. 1976). We are persuaded, however, that we can not determine that question on this appeal. There is nothing in the record that indicates that issuance of the subpoenas resulted from an invasion of the attorney-client privilege. Similarly, the affidavit in

support of the search warrants contains a sufficient basis for the finding of probable cause that evidence would be found in Doe Two files at the offices of Doe Four without reliance upon any information obtained by Doe One's wife from Doe Two.

We conclude that the subpoenas are valid exercises of the grand jury's investigatory power, that the search warrants are sufficiently specific and justified by probable cause, and that none of the documents we have reviewed are subject to any evidentiary privileges. We have also concluded that there is no reason to consider the applicability of the crime/fraud exception or whether dismissal of this action is warranted because of governmental misconduct at this stage of the proceedings.

The judgment of the district court is AFFIRMED.

---

3. At our instruction, the clerk of this court contacted the district court to obtain the documents at issue. The district court informed the clerk of this court that the documents were in the possession of the FBI. The clerk contacted the FBI, which delivered a sealed box of documents to the clerk. Our ruling as to attorney-client privilege and work-product doctrine is limited to the documents which we have reviewed. The box secured from the FBI shall be returned to the clerk of this court, under seal, for final disposition.